## JAMES W. PRICE *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE R. R. CO.

### *Contributory Negligence—Intoxication.*

The circumstance that at the time of the happening of an accident, the person injured was intoxicated is not an excuse for his failure to exercise that degree of care which is demanded of a sober man under the same circumstances.

Plaintiff while drunk sat down upon the edge of a railway track, upon the company's exclusive right of way. The position was perilous and plaintiff had been warned of the danger from passing trains. He was either asleep or unconscious when he was struck by a train. There was no evidence that he was seen by any of the trainmen, although the track was straight at that point. The defendant offered no evidence and upon the conclusion of the plaintiff's testimony the jury were instructed that he was not entitled to recover. *Held,*

1st. That the plaintiff's own negligence was the cause of the injury and such as to preclude him from maintaining the action and that he had failed to show that the defendant's agents had knowledge of his danger in time to prevent the injury.

2nd. That it was not incumbent upon the defendant to offer any evidence showing how the accident happened.

Appeal from a judgment of the Circuit Court for Cecil County (WICKES and STUMP, JJ.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Albert Constable* and *John S. Young* (with whom was *George Y. Maynadier* on the brief), for the appellant.

In directing a verdict for the company, the Court below relied upon *State use of Ricketts* v. *B. & O. R. R.*, 69 Md. 494, as decisive of this case. While fully accepting the doctrine of that case, we respectfully assert that this case is clearly and broadly distinguishable from it. In the first place, we assert that there is evidence from which the jury

could have found that the company's agents in charge of the train saw Price in time, by the exercise of reasonable care, to have avoided injury to him.    The freight train that struck Price, coming from towards Baltimore, had an un-obstructed view of the place where he sat for three or four miles.    Price was upon an elevated embankment, over which the tracks were laid, 125 yards out into the water of the river.    No more conspicuous position was possible at any point between Baltimore and Philadelphia.    In addition to this, the train, at the time, was approaching a bridge with a draw in it.    It was, therefore, necessary for those in charge to be on the watch, their attention drawn directly towards the place where Price was.    Concede it to be true, which we deny in this case, that Price was a trespasser, and that the company's agents in charge of the train owed him no duty until they had discovered him, still, after they had dis-covered him thus perilously exposed, they would owe him a duty of common humanity, not to murder him.    Concede they were not bound to be on the watch to discover him, yet, when they *did discover him*, the duty arose to use rea-sonable care not to run him down with their engine.    And the question here is, not whether by reasonable care, they *might have discovered* him upon the railroad tracks, but whether there is evidence *that they did, in fact, discover him*. For, whether they owed him any duty or not *before* they saw him, the law is clear that they owed him the duty of exercising reasonable care to avoid injuring him *after* they saw him.    Therefore, if the jury, in this case, could have found, upon any facts in evidence, *or by any reasonable in-ference from such facts*, that the company's agents in charge of the freight train saw Price upon the tracks in time to have avoided injuring him, then the Court was wrong in directing a verdict for the company.    There can be no doubt that Price occupied a most conspicuous position, and one which could not possibly have been more favorable for his discovery by engineers and firemen of trains approaching Bush River bridge from the west.    In fact, it was next to impossible

that the engineman and fireman of this train could have performed their duty to the company at that point of keeping a careful watch for the signals of danger or safety, which are always exposed as a train approaches the river and drawbridge, without also having, right under their eyes, this man lying helpless upon the tracks in front of them.  No doubt this duty, thus due from those in charge of the train at that point, was a duty, not to Price, but to the railroad company. But still, it has an important bearing upon the question of fact, whether those agents, as they approached the draw in the Bush River bridge, were in a position and had their attention drawn in a direction which would bring Price's body, as he lay upon the elevated approach to the bridge, directly within their line of vision.  Had their attention been otherwise directed and they had driven their train into the draw of the bridge, with a probable loss of life, it would have been a case of criminal neglect, which is not to be presumed.

We claim that it may be reasonably inferred that the appellant was seen by those in charge of the train that struck him, and add the additional and persuasive fact that the company declines to call as witnesses those agents of theirs who were present and who must know the truth or falsity of the charge, the jury were entitled to find that appellent had proved, at least *prima facie*, that those in charge of the train saw him upon the tracks and could have avoided running over him.

We deny, however, that Price was a trespasser to whom the company owed no duty.  In the first place, Price was a passenger whom this company had taken under its charge, and to whom it owed a duty of a very high and special character.  It won't do for them to say they turned a passenger out upon the platform of a station, drunk and helpless, surrounded by dangers which they knew he was in no condition to encounter—a station, too, from which there was no exit unless he became a trespasser upon the lands of third persons, or walked along their tracks till he reached a public

road.   It is not necessary in this case to discuss the question whether a railroad company may put off a trespasser, to whom it owes no duty, at a place where there is a probability he will be killed.   Price was a passenger, and the fact that, by their mistake or his, he failed to leave the train at the station to which he had a ticket, did not make him a trespasser.   It would be a monstrous doctrine to hold that a passenger who, by mistake or accident, went past his accredited station, became by that act a trespasser to whom the company owed no duty.   *Lake Shore and Michigan Railway* v. *Rosenweig*, 113 Penn. St. 519.   We have no evidence by whose fault it was that Price was taken past Magnolia.   He was helplessly drunk and unconscious, and so has no knowledge on the subject; and the company refuses to give any explanation.

*C. C. Crothers* (with whom was *L. M. Haines* on the brief), for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This action was originally brought in the Circuit Court for Harford County and removed thence to the Circuit Court for Cecil County for trial.

The plaintiff, at the time of the accident, lived at Leyre's Point, on the west side of Bush River, in Harford County. On the morning of the 8th of July, 1892, he purchased at Magnolia Station, on the appellee's road, an excursion ticket to Baltimore which entitled him to a return ride to Magnolia. He rode to Baltimore and in the evening of the same day he returned over the appellee's road in the direction of Magnolia Station.   There is nothing in the record to show when he left the train or what became of him, until seen by William Gunther, who together with other employees of the appellee were engaged in preparing timber for a bridge over Bush River.   Gunther supposing plaintiff was about to cross the bridge, as he lived in that direction, warned him to be careful as there were trains passing ; he replied that

he was not afraid of the cars. The plaintiff testifying in his own behalf proved that he had been drinking and shortly after he left Bay View Station on his return trip, the whiskey he had taken " took great effect on him " and he lost consciousness, and never regained it, until one month thereafter, when he found himself at the Baltimore City Hospital under treatment for the injuries which he had received and that he does not know how he was injured, except from what he has been told by others. The testimony of John Donahoo, who testified for the plaintiff, shows that " on an evening, in a summer two or three years ago, he was standing at his house before sundown intending to go fishing at a bridge on defendant's road ; that before leaving his house he looked towards said bridge and saw a man sitting on the railroad, where it passes over the embankment, or approach, to the bridge ; that he walked in the direction of the embankment where the man was sitting and when he got to a point distant from him of about two hundred yards, he saw a freight train coming from the direction of Baltimore and stop ; approaching the train he found that the man had been struck and was lying between the railroad tracks ; he was the only one there excepting the trainmen ; one of the trainmen told witness that he saw something on the railroad, but could not tell what it was, whether it was a hog, or calf, or what ; that there is a clear unobstructed view of the embankment whereon the appellant was sitting when struck, of three or four miles, the road being perfectly straight and nearly level."

Upon the conclusion of the testimony for the appellant, the appellee prayed the Court to instruct the jury " that there is no evidence in this case legally sufficient to entitle the plaintiff to recover." The Court granted this prayer, which was excepted to by the plaintiff. The only question arising on the appeal is the sole inquiry as to whether the prayer was properly granted. The appellee having offered no testimony the case rests entirely upon the effect of the appellant's testimony.

PRICE vs. P. W. B. R. R. CO.          511

Md.]                    Opinion of the Court.

To entitle the appellant to recover in this action, the burden is upon him to show, 1st, that the appellee has neglected its duty, and 2ndly, that the injury which he has sustained is the direct consequence of such neglect of duty. It not infrequently happens that in cases of this character a third question presents itself for consideration. We refer to the question of contributory negligence on the part of the plaintiff, to support which is incumbent upon the defendant, unless the plaintiff has clearly demonstrated that he has by his negligence or want of caution, directly contributed to the injury for which he is seeking to recover damages. In such a case the question may become one of law for the Court to dispose of as upon a demurrer to evidence, and nothing remains for the jury to consider, or pass upon. This Court has on repeated occasions been required to consider questions of this nature and it has uniformly maintained the view herein expressed. *N. C. R. Co.* v. *Burns*, 54 Md. 113 ; *B. & P. R. Co.* v. *Stansbury*, Id. 648 ; *State, use of Bacon*, v. *B. & P. R. Co.*, 58 Md. 482 ; *B. & O. R. R. Co.* v. *State, use of Allison*, 62 Md. 479 ; *State, use of Ricketts*, v. *B. & O. R. R. Co.*, 69 Md. 498 ; *State, use of Schroder*, v. *B. & O. R. R. Co.*, Id. 551. The facts of this case as hereinbefore stated show that the plaintiff was in a helpless state of drunkenness and fell asleep or was unconsciously sitting upon the railroad track ; that he left the train at a point west of Bush River bridge and under the influence of the whiskey which he had drunk he sat down on the railroad track at a most perilous place, notwithstanding he had been warned by Gunther of the danger of passing trains, and there waited until struck by the engine of the defendant. The evidence shows that the point where he was sitting when injured, could be seen for a distance of three or four miles looking down the track in an easterly direction, but there is not a vestige of proof in the record which tends to show that a man was seen on the track by any of the trainmen. By one of his witnesses the plaintiff proved that one of the trainmen told him that he saw some-

thing on the railroad, but could not say what it was. It was undoubtedly the plaintiff, but this inference is drawn from facts and circumstances, a knowledge of which the trainmen could not possibly have had—so far certainly as the testimony in the record discloses.

In the case of *Kean* v. *B. & O. R. R. Co.*, 61 Md. 168, ALVEY, C. J., delivering the opinion of the Court, says : " If the plaintiff was on the crossing or at any other place on the road tracks of the defendant in such condition as not to be able to take care of himself, or paid no heed to the warnings of the approach of the train, or if from negligence or reckless indifference to the perils of his situation, he failed to observe the precautions necessary to his safety, and his situation was not known to those in charge of the train, and, while observing a careful lookout, was not discovered by them in time, by the use of reasonable care and diligence, to save him from injury, then his own want of care and reckless negligence in putting himself in such place of danger would deprive him of all ground of action against the defendant."    A learned writer upon the subject of contributory negligence has said that " Drunkenness is a wholly self-imposed disability, and in consequence is not to be regarded with that kindness and indulgence which we instinctively concede to blindness or deafness, or any other physical infirmity. Trespassers go at their peril. That is a settled law. Much more is it just to hold that they make themselves drunk at their peril. Disabilities, moreover, of any kind are to be a shield, and never a sword. It would be a strange rule of law that regarded a certain course of conduct negligent and blame-worthy upon the part of a sober man, but that held the same conduct, on the part of the same man, when intoxicated, venial and excusable. Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication *cum periculis.* When they make them-

selves drunk, and in that helpless condition wander upon the premises of sober men and sustain an injury, they will not be heard to plead their intoxication as an answer to the charge of negligence." *Beach on Contributory Negligence*, 2nd ed., 391.

This is not a case where the plaintiff's negligence has *re-motely* contributed to the cause of the accident, but it is one in which he has, as a drunken trespasser on the railroad track of the defendant, directly contributed to produce the injury complained of. Nor is it a case which admits of any doubt on our part as to the comparative degrees of negligence of the respective parties to this appeal, and we have no hesitation in saying that the plaintiff's negligence as shown by the evidence was the sole cause contributing to the injury he has sustained, and there is nothing in the record of this appeal which tends to show that the defendant failed to use reasonable care to avoid the consequences of the accident or that it could, by the exercise of reasonable care have avoided the injury complained of. This Court has said in the case of the *Md. Central R. R. Co.* v. *Neubeur*, 62 Md. 398, ALVEY, C. J., delivering the opinion of the Court, that "The general principle is, that where both parties by their negligence directly contribute to the production of the accident, neither has a right to recover of the other for injuries sustained thereby. But there are exceptions to this general rule ; and in cases like the present, the exception is, that if the defendant, or those acting for it, had become aware of the perilous situation of the plaintiff, though that peril had been incurred by the negligent or even reckless conduct of the plaintiff, yet the defendant or its agents would be bound to use all reasonable diligence to avoid the accident. But in order that this qualification of or exception to the general rule may be successfully invoked by the plaintiff, he must show knowledge on the part of the defendant or its agents of the peril in which he, the plaintiff, was placed, and that there was

time after such knowledge, within which to make the effort to save him from the impending danger."

We think it very clear, upon authority and upon reason, that any one who undertakes to use the right of way of a railroad, either as a convenient footway for himself or for any business disconnected with the railroad, he is a wrong-doer and a trespasser, who is to be regarded as having a full understanding of its insecurity and as accepting the risks of all its dangers.

There yet remains for our consideration a question earnestly argued by the plaintiff's able counsel at the hearing in this Court, that it was a duty incumbent upon the appellee company under all the circumstances of the case to give some account of the injury sustained by the plaintiff and not to refuse such information.   But this contention is, we think, without authority to support it.   If the plaintiff believed he could advance his cause or multiply his chances of success by using the employees of the defendant as witnesses testifying in his own behalf, he had the unquestionable privilege of requiring their attendance and offering them as witnesses in support of his action.   But no just criticism can be applied to the defendant, because it failed to call any witnesses in its own behalf, and thus unnecessarily have prolonged the trial of the case.   The plaintiff having failed to make out a case, the Court very properly granted the prayer of the defendant, to which we have failed to discover any objection.   For the reasons assigned the judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided January 5th, 1897).