FRANCENA LEIGHTON, Admx., *vs.* WILLIE LUTHER WHEELER.

Hancock.    Opinion March 12, 1910.

*Negligence.   Railroads.   Injury to Section Man.   Liability of Engineer.*

1.  Actionable negligence is a breach of duty owed to the party injured. Breach of duty owed to other parties than the party injured is not actionable by him.

2.  A locomotive engineer on a regular railroad train owes no duty to section men to keep a lookout for them, to anticipate that they may be on the track.   He can rightfully assume they will perform their duty to him of looking out for, and keeping clear of, regular trains.

3.  If, as soon as he does see a person on the track in such situation that he. may not seasonably leave the track, the engineer does all in his power to stop the train, though unsuccessfully, he is not guilty of negligence.

4.  In this case in which a section man lying prostrate and motionless on the track was run over and killed by a regular train the evidence does not show actionable negligence on the part of the engineer.

On motion by defendant.   Sustained.

Action on the case under Revised Statutes, chapter 89, sections 9 and 10, brought by the plaintiff in her capacity as administratrix of the estate of her husband, Hollis Leighton, against the defendant to recover damages for causing the death of the plaintiff's intestate by wrongful act, neglect or default.   Plea, the general issue.   Verdict for plaintiff for $2000.   The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*Daniel E. Hurley*, for plaintiff.

*Hale & Hamlin*, for defendant.

SITTING : EMERY, C. J., PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

EMERY, C. J.   The defendant Wheeler was the locomotive engineer in charge of the locomotive drawing the regular morning west bound passenger train on the Washington County Railroad from Calais to Washington Junction on Dec. 25, 1908.   A little

east of a highway crossing known as the Eastbrook crossing was a switch track, or side track, some 500 feet long with a switch at each end. The eastern whistling post for this Eastbrook crossing was 1085 feet east of the east switch. In approaching this crossing from the east the locomotive ran over the prostrate body of a man lying motionless on the track at or near the east switch. This man proved to be the plaintiff's intestate, Mr. Leighton, who was then a section man in the employ of the Washington County Railroad Company, and whose duty was to care for the road bed and track within that section.

It is not known when, why or how Mr. Leighton came to be lying prostrate and motionless on the track at that time, about 10.35 A. M., the time for the regular passenger train from the east to pass that point. No one saw him there until he was seen by the defendant engineer. Indeed, no one saw the incident of his being run over except the engineer and fireman of the locomotive. Their account of what occurred is the only one we have, and must be taken as true except so far as it is contradicted or too improbable for belief. The engineer's account is substantially as follows:— He whistled as usual at the eastern whistling post for the Eastbrook crossing, the train being on time and running at its usual speed at that place thirty-five miles an hour. On nearing the east switch and when within 200 or 300 feet of it he saw for the first time a dark object on the track on the left hand side and near the switch. At the first glance he thought it was where the section men had been digging out ties, but at a second glance within a "fraction of a second," he sounded the alarm whistle, shut off steam, applied the emergency brakes, and opened the sand valves, these being all he could do to stop the train. The fireman testified that after the whistling for the crossing, he was down fixing the fires, when he heard the alarm whistle sounded, the emergency brakes applied, etc., and immediately straightened up and looking out of his window saw a dark object on the track about 100 yards ahead, — the train running at the usual speed of 35 miles an hour.

Passing other questions, we come directly to the question of the defendant's negligence. There was no evidence that he failed to

do all things possible to stop the train after applying the emergency brakes, but the plaintiff contends that there was sufficient evidence of his negligence to warrant the verdict, in that, first, he did not discover the body on the track as soon as he could and should; and, second, he did not as soon as he could apply the emergency brakes, etc., after he did discover it.

As to the first contention, there was evidence that had the engineer been on the lookout for persons or bodies on the track ahead he could have seen the body of Mr. Leighton more than a thousand feet away assuming it was then there, and by then applying the emergency brakes, etc., he could have stopped the train short of the body. This evidence raises the question whether the engineer was guilty of negligence in not being on the lookout for, and discovering, the body of Mr. Leighton that thousand feet or more away.

Whatever the defendant's negligence as to others, he was not negligent as to Mr. Leighton unless he violated some duty owed to him. 23 Am. Eng. Ency. of Law, 732. Granting, as argued, that it is the duty of a locomotive engineer to his employers and all persons on the train to be on the lookout for persons and things on the track, it does not follow that such is his duty to the persons who may be on the track, that it is his duty to them to anticipate their presence there. It does not follow, even, that he must stop or slow his train as soon as he does see a person on the track. That duty does not arise until he has reason to apprehend that such person will not himself seasonably leave the track. *Garland* v. *Maine Central R. R. Co.*, 85 Maine, 519.

Unquestionably, as the cases cited by the plaintiff hold, under some circumstances and conditions the engineer would be bound to assume the probability that persons might be on the track ahead, as when he approaches a highway crossing at grade, or passes through a village or city street. In such cases, of course, it would be his duty to them to keep a lookout. Under other circumstances and conditions he would not be bound to assume any such probability, as when running through a sparsely settled country distant from dwellings and at places where there is no crossing. In such cases it

would not be his duty to keep on the lookout for them.    He could lawfully assume that his train, especially if a regular train, has in such places the exclusive right of way over the track and that all persons will keep themselves and their property off the track or out of the way.   In *Woodruff* v. *No. Pac. R. Co.*, 47 Fed. 689, it was alleged that the engineer could have seen the plaintiff's child on the track in time to stop the train, and that this failure to see the child was negligence.   On demurrer it was held that such failure to see the child was not negligence.   In *Sheehan* v. *St. P. & D. Ry. Co.*, 76 Fed. 201, there was evidence that the engineer could have seen the plaintiff caught in a cattle guard in season to have stopped the train before reaching him.   The court, however directed a verdict for the defendant, and speaking of the duty of the company toward a person on its tracks, the court said, "There is no constructive notice upon which to base the obligation of constant look out for his presence there, and no actual notice up to the moment the train men had discovered the fact of his peril."   In *Truedell* v. *G. T. R. Co.*, 126 Mich. 73, 85 N. W. 850, the trial court instructed the jury in effect, that if the engineer could have seen the plaintiff's intestate on the track at a sufficient distance to have stopped the train and failed to do so, the jury might find that to be negligence. Held error, on the ground that the engineer had no reason to expect to see him.   In *C. C. C. & St. L. Ry. Co.* v. *Tarrt*, 99 Fed. 369, it was said, "Even if those employed on the engine which killed the plaintiff's intestate, could have seen him when he was 2400 feet from the train, their failure to discover his presence, or that of his son, until the train was a little more than 700 feet from them would give no right of action.   There was no evidence offered upon behalf of the plaintiff below to prove that the employees on the train actually discovered the presence of the deceased or his son on or near the track until just before the accident happened."   Held that a verdict should have been directed for the railroad company. In *Craddock* v. *L. & R. R. R. Co.*, 116 Ky. 900, 77 S. W. 174, the plaintiff's intestate, a boy eleven years of age, was lying on the railroad track between the rails.   A brakeman who was in the engine cab on the opposite side from the engineer testified that he

saw an object about 150 yards ahead which looked like a piece of paper but when the engine had approached within 30 feet of the object he discovered the deceased lying on the track between the rails; that the engineer immediately applied the brakes but it was too late and the train ran over the boy. There was evidence that the boy could have been seen from the engine at a point some 230 yards distant. The court, however, directed a verdict for the railroad company, upon the ground that no duty to stop the train arose until the peril to the deceased was actually discovered. In *Price* v. *P. W. & B. R. R. Co.*, 84 Md. 506, 36 Atl. 263, the plaintiff while intoxicated was asleep or unconsciously sitting on the track when run over by the train. The evidence showed that the point where he was sitting could be seen for a distance of three or four miles down the track in an easterly direction, but there was no evidence which tended to show that a man was in fact seen on the track by any of the trainmen, though one of the trainmen was reported to have said he saw something on the railroad track, but could not say what it was. Judgment for the company was affirmed.

The foregoing citations sufficiently illustrate the principle that where a locomotive engineer has no reason to anticipate that persons may be on the track in such condition that they cannot leave it before the train reaches them, it is not his duty to them to be on the watch for them, and his failure to see them and their condition as soon as he could had he been on the watch, is not negligence as to them.

It remains to apply the principle to the circumstances and conditions disclosed by the evidence in this case, and to determine whether it was the duty of the defendant engineer to Mr. Leighton to anticipate that he might be lying prostrate, where he was on the track, in a helpless condition, and hence to be on the watch for him. The place was distant from any crossing, not a place where any person would have occasion to be on the track at the time for a regular passenger train to pass. True, Mr. Leighton was not a mere trespasser. He was in the employ of the company and could lawfully be on the track between trains, to make repairs, remove obstructions, etc. In this respect the case is different from many

of those above cited.    It was his duty, however, to be himself on the watch for trains, and seasonably leave the track clear for their passage, and not delay them by sitting, lying or even standing on the track.    Especially was it his duty to be on the watch for regular passenger trains running rapidly on schedule time.    He owed this duty to the engineer charged with making that schedule time.

The engineer had other duties and responsibilities.    He could not always be on the lookout to see whether section men were lying helpless on the track.    He had the care of his engine and train, was bound to keep watch of the water and steam guages, to note the working of the engine, to keep up its efficiency, to note whether all was well with the running of the train.    He could lawfully assume that Mr. Leighton and every other section man would on his part do his duty, would be on the watch for trains, especially regular passenger trains on time, and seasonably leave the track clear for them.    He had no reason to anticipate that Mr. Leighton would remain on the track or would be unable to leave it when the train was due.    We think it clear, therefore, that he owed Mr. Leighton no duty to keep on the watch for him, to anticipate that he might be helpless on the track.    It follows that the defendant's failure to see Mr. Leighton and his condition as soon as he could had he been on the watch for him is not actionable negligence.

As to the second contention (that the defendant did not as soon as he could, apply the brakes, etc., when he did discover the body) there was evidence that the train went some 300 feet west beyond the east switch before it came to a stand still, indicating, as claimed by the plaintiff, that the train moved 500 or 600 feet from the point where the engineer said he applied the brakes.    It also appeared that the grade was "very slightly ascending."    The train consisted of engine, tender, baggage car and two passenger cars. It had rained in the night before and the rails were wet and slippery. The plaintiff's argument is that the fact that the train ran 300 feet west beyond the east switch shows that the defendant did not apply the brakes, etc., as soon as he saw the object and saw that it might be the body of a man, taking his own story that he saw it when he was some 200 or 300 feet east of the switch.

We find no evidence, however, from railroad men, other than those for the defense, as to how far such a train under all the proven circumstances and conditions would run after applying the emergency brakes, shutting off steam and opening the sand valves and no expert evidence whatever that it would come to a stand still in less than 500 feet. Three passengers on the train (not railroad men) testified that in their opinion the train ran only some 200 or 300 feet after the brakes were applied. It does not appear, however, that either of them at the time noticed or had occasion to notice the time or distance, or was at all accustomed to judge of them on railroad trains. They were only giving an opinion formed after the event. They undoubtedly were startled, if not alarmed, by the alarm whistle, brakes, etc., and were more intent on learning the cause than in estimating the time or distance. It is also to be borne in mind that at the time the brakes were applied, the train, moving at 35 miles an hour, was covering 300 feet in six seconds. It should be evident we think that such testimony is not sufficient for a verdict against the positive testimony of the engineer and fireman, and the great, almost overpowering probability, that the brakes were applied, instinctively, as soon as the danger was seen.

The defendant stated at the coroner's inquest that he thought the train ran "the length of ten or twelve cars" after he saw the body and sounded the whistle. He stated at the trial, however, without contradiction that railroad men, in measuring distances by car lengths, always have in mind freight cars, and that he used the phrase in that sense. Measured by freight car lengths, the difference between his estimate given at the inquest and that given at the trial is not enough to invalidate either. The whole matter of distance was one of estimate. The train was moving rapidly, fifty feet per second, and any estimate, however careful, might be many feet out of the way. That of the engineer and fireman, accustomed to estimate distances on railroad tracks, is much the more likely to be correct.

Upon the whole evidence we are satisfied the jury would not have been warranted in finding that the engineer negligently delayed endeavoring to stop the train when he saw the danger.

The plaintiff, however, further urges that the defendant engineer should have slowed his train instantly, when he saw the dark object on the track, that he should have assumed at once that it might be the body of a man, and have brought his train under control for quick stop. Upon this contention see *Craddock* v. *L. & R. R. R. Co.,* cited above. The evidence, however, does not show that there was any unnecessary time between the first sight of the object and the application of the brakes. The second look when the brakes were applied was within "the fraction of a second." The application of the brakes at the first sight would not have averted the catastrophe.

The consequence of the disaster to Mr. Leighton, his widow and children are very distressing, but the evidence does not show that the defendant is legally responsible for them. The case appears to be one of those where the consequences, however grievous, must, so far as the law is concerned, remain where they fell.

*Motion sustained.*
*Verdict set aside.*