## STATE, Use of JELSOMINA MANFUSO ET AL. *vs.* THE WESTERN MARYLAND RAILROAD CO.

*Contributory Negligence—Driving Across Railway Tracks Without Stopping When the View is Obstructed.*

When a person attempts to drive across railway tracks at a crossing in the country of more than ordinary danger because the view is obstructed, without first stopping to look and listen, and is struck by a passing train, his failure to stop, look and listen is contributory negligence as matter of law.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*William Colton*, for the appellant.

*Leon E. Greenbaum* (with whom was *George R. Gaither* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

John Manfuso was struck and killed by a locomotive of the defendant company on the 18th day of November, 1903, at Mt. Hope Station in Baltimore County.

This suit was brought by his widow and infant children to recover damages for his death which is alleged to have been caused by the negligence of the company.

Manfuso was in the act of crossing the tracks of the railroad company at Mt. Hope, and was struck by an engine of the company and killed.

The tracks at the point where the accident occurred were crossed by a private road, much travelled, leading from the Reisterstown road into the grounds of Mt. Hope Retreat.

The record contains two bills of exception, one to the ruling of the Court on a question of evidence, and another to the action of the Court in granting the prayers submitted by the counsel of the defendant at the conclusion of the plaintiff's case.

In the argument before this Court, counsel for the appellant abandoned the exceptions to the testimony, and, consequently, the only question to be determined is: Was the Court right in withdrawing the case from the consideration of the jury?

This involves an examination of the facts and circumstances under which the injury which caused the death of John Manfuso was received.

Manfuso was a fruit dealer, and on the morning of the accident had borrowed a horse and wagon from Dominick Saio for the purpose of delivering some fruit at Mt. Hope Retreat. Saio accompanied him on the journey, and was with him in the wagon when the accident occurred.

In travelling to the institution they went out the Reisters-

town road, and went down the private road or lane above-mentioned, crossed the tracks of the railroad, and entered the grounds of the institution.

As they approached the crossing, a train passed, and Manfuso told Saio the crossing was a *dangerous place*.

He delivered the fruit, and began the return trip to the city, and whilst in the act of crossing the tracks at Mt. Hope Station the wagon was struck by an express train of the defendant company—the York limited—and Manfuso was killed, and Saio injured.    The accident occurred between nine and ten o'clock in the morning.

The day was clear and cold, and the sun was shining. The road over which they were travelling was smooth, and the wagon in which they rode was new and made little noise.

It appears from the evidence that after passing the station at Mt. Hope the tracks of the company curve, and at a distance of about six hundred feet from the station there is an abrupt curve, which obscures the view of an approaching train, renders its presence at that curve invisible to one standing at the distance of ten feet from the west-bound track; and that a fast train would cover the distance from this curve to the crossing in about ten or eleven seconds.

In approaching the crossing in the direction in which the deceased was travelling there were trees and shrubbery which cut off the view of the tracks to the northwest, and at the entrance to the grounds of Mt. Hope there was gate house and station house which obstructed the view of the tracks as one approached more closely the crossing, and when the gate house was reached only about twenty-five or thirty feet of the track was visible.

Near the railroad crossing there was a danger signal, warning travellers to stop, look, and listen, which notice Manfuso saw and read.

The train which struck the deceased was coming from the west.

The witness, Saio, gives the following account of the accident:

Q. And you were looking for trains coming towards Baltimore?

A. Yes sir.

Q. And he was looking for trains coming from Baltimore?

A. Yes sir.

Q. And it was agreed between you that you would watch out?

A. Yes sir.

Q. How fast were you going?

A. Very slow. We ran fast when we first started, but when we got near there he said he would go quite easy, so we see if any train was coming, because *he said this is a dangerous place.*

Q. What did you do with the way of keeping on easy, how slow did you go?

A. We went right slow, and we passed a little house.

Q. That is the gate house?

A. Yes sir.

Q. And you came out the gate?

A. Yes sir.

Q. Then what?

A. We went real slow, almost stopped.

Q. Which way were you looking?

A. On the left side way.

Q. That way (indicating).

A. I could not look all the way though, because the house was against me.

Q. But when you got outside the gate and got near the track you could see up the track could you? ·

A. Yes, sir. I stuck my head through the wagon to see if any train was coming.

Q. Could you see up as far as the curve?

A. I could not see all the way through because I didn't have a chance.

Q. How far was your horse from the track here (indicating) when you got sufficiently open view to see up the track?

A. We were near the track, and all at once, crack! and I

see black smoke coming fast, and I don't know where we went to.

On cross-examination Saio testified as they approached the crossing he and Manfuso "were talking about that dangerous place, because he knew it was a dangerous place there, and that is the reason we were talking; he told me to look up, and he was looking down, to pay attention to a dangerous place."

It is thus apparent from the testimony that the crossing was a peculiarly dangerous one, and that Manfuso was acquainted with its surroundings and was aware of its danger.

The danger attending the crossing is made more evident by the testimony of Saio to which we have alluded.

Notwithstanding the danger which confronted him, and of which he was well aware Manfuso, without stopping, drove upon the tracks of the railroad, and was killed by a passing train. Was Manfuso guilty, as a matter of law, of contributory negligence in attempting to cross the track of the defendant company under the circumstances we have stated?

If so, the Court was clearly right in withdrawing the case from the consideration of the jury, and in directing a verdict for the defendant.

By the settled law of this State certain well-defined and imperative duties are imposed upon persons before they make the attempt to cross the tracks of a railroad company.

They are bound under all circumstances to look and listen for approaching trains, and if the crossing is one of more than ordinary danger and the view of the tracks is obstructed at, or near the place of crossing it is the duty of the traveller to *stop, look and listen* before he attempts to cross, and if a person neglects these necessary precautions, and in consequence of such neglect is injured by the collision with a passing train he will be held to have contributed by his own negligence to the occurrence of the accident, and will not be allowed to recover for any injury he may have sustained.

The circumstances under which a person is *bound to stop* before attempting to cross have been indicated in a number of cases in this State.

In the case of the *Maryland Central Railroad Company* v. *Neubeuer*, 62 Md. 399, this obligation upon the part of the traveller to stop, look and listen before making the attempt to cross was considered by the Court.

Referring, in that case, to this obligation, ALVEY, C. J., said: "A large number of the decisions go to the extent of holding that it is incumbent upon the traveller, at ordinary street crossings, to stop, look and listen before attempting to cross the rails; and if he fails to observe this precaution, he forfeits all right to recover for injuries received. This precaution is not only reasonable and proper to be observed on the part of the traveller on a public road, crossing railroad tracks, for his own safety, but it is equally necessary for the safety of the multitude of the people riding in the railroad train, liable to be killed by collision of the train with obstacles on the track."

While referring to the rule with approval, the Court, however, declined to follow the authority of cases in many other States, and declare it to be the duty of the traveller in *all cases* to *stop* before attempting to cross.

In the case of *The Philadelphia and Baltimore Railroad Company* v. *Hogeland*, 66 Md. 149, the question was again presented for consideration, and ALVEY, C. J., speaking for the Court, said: "The rule is now firmly established in this State, as it is elsewhere, that it is negligence *per se* for any person to attempt to cross tracks of a railroad company without first looking and listening for approaching trains, and if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track, should stop, look and listen before attempting to cross." And it was said in *State*, *use of Price* v. *C. & P. Railroad Co.*, 87 Md. 188, that, "If the traveller's view of the railroad is obstructed so as to prevent him from seeing whether a train is approaching, it is his duty to stop, look and listen before attempting to cross." And in *Watson's case*, 91 Md. 355, it is said that the obligation to stop "should be applied to all cross-

ings where the view is obstructed, or when for any reason, it is evident that the traveller can hear better and avoid danger by stopping to listen in a place of safety."

In *Holden's case,* 93 Md. 417, where the view of the track was obstructed in one direction only, the defendant's sixth prayer which had been refused by the trial Court, was under consideration.     By this prayer the Court was asked to instruct the jury that if they found that the plaintiff's view on his near approach to the track was in *any manner obstructed,* that then it was the duty of the plaintiff before going on the track to stop, look and listen for the train, and if he violated this rule by failing to stop, he was guilty of contributory negligence, and could not recover.

In delivering the opinion in that case, FOWLER, J., speaking in reference to that prayer, said: "The plaintiff's first contention is that the language of the prayer is too broad, but we cannot agree with him.     We think it clearly announces the established rule, which we said in *Hogeland's case,* 66 Md. 149, *"is one which the Courts ought not to relax,"* as its enforcement is necessary as well for the safety of those who travel on railroad trains as for those who travel on the common highways.

In the case just cited the rule is thus expressed, "if the track in both directions is not *fully in view* in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track should stop, look and listen before attempting to cross."

The prayer we are considering declares that if the view was in any manner obstructed, it was the duty of the plaintiff to stop, &c.   This is equivalent to saying that if the track was not "fully in view," that is to say if there was an obstruction of the view by a hill, a bank, trees, or *in any manner,* due care requires the traveller on the common highway to stop and listen before attempting to cross."   The prayer in the opinion of the Court announced the correct principle of law applicable to the case, and was in itself free from objection, but its refusal by the Court below was not pronounced to be error, because

the concession of the plaintiff's first prayer estopped the defendant from complaining of the rejection of its sixth prayer.

It may be declared to be the fixed and inflexible rule of law in this State that it is the duty of the traveller to *stop, look* and *listen* before attempting to cross the tracks of a railroad, where the crossing is one of more than ordinary danger, because of obstruction at, or near the immediate approach to the point of intersection of the roads by reason of which the track is not fully in view, and if he attempts to cross in disregard of this duty, and in consequence thereof is injured, he will be held to be guilty in law of contributory negligence.

The undisputed evidence in this case shows that the crossing in question was of more than ordinary danger; that the view of the tracks, in the immediate approach to the crossing, on the north-west from which direction the train which struck and killed Manfuso came, was obstructed by shrubbery, trees, a gate house, and a station house; that, *without stopping*, he attempted to cross and was struck by a passing train and was killed, and that his failure to stop, look and listen was the direct and proximate cause of his injury. Therefore, he was guilty of contributory negligence as a matter of law.

It was the clear duty of the Court, under the facts, to have granted the defendant's second prayer by which the jury was instructed to find their verdict for the defendant.

*Judgment affirmed.*

(Decided December 6th, 1905.)