# BENNETT HATCHER *vs.* ALLEN L. M. McDERMOTT, RECEIVER, ETC.

*Collision at Crossing of Suburban Electric Railway—Extra Car Following Scheduled Car at Short Interval—Contributory Negligence.*

The fact that on a suburban electric railway an extra car is run at high speed over a public crossing close to the regular scheduled car is not evidence of negligence on the part of the railway, and does not relieve a person crossing the track from the duty of looking out for other cars after he has seen the scheduled car pass by. Such person is not justified in assuming that another car would not pass so soon after the first.

Testimony that a person injured by collision with an electric car at a highway crossing in the country did not hear a gong sounded as the

car approached is not *per se* evidence of negligence on the part of the railway, since it may be that a whistle, such as is frequently used on country electric cars, was blown, or other signal given.

Plaintiff, driving at night in a wagon whose side curtains were down, approached the single track of an electric railway at a crossing in the country. The highway ran to the track at an acute angle and plaintiff was coming from Washington City. He stopped *130 feet from the track* and, after looking and listening, saw the regular scheduled car from that city pass by, coming from behind him. At the point where he stopped he was unable to see more than about 250 feet of the track in the direction of the city. Knowing that the next scheduled car from the city would not pass for an hour, plaintiff drove on the track in a rapid walk, looking in front of him and not again stopping to look or listen for other cars, when his wagon was struck by an extra car, which followed the first at an interval of about fourteen seconds. Near the crossing the view of the track was unobstructed for half a mile. There was no evidence that the second car was not lighted as usual, and if plaintiff had either looked or listened after the passage of the first car, and as he came to the track, he could have become aware of the approach of the extra car. *Held*, that even if the railway company had been guilty of negligence, yet plaintiff's contributory negligence was such as to preclude him from recovering damages for the injuries so inflicted.

Appeal from the Circuit Court of Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*F. Snowden Hill* (with whom was *James C. Rogers* on the brief), for the appellant.

*Talbott & Talbott*, for the appellees, submitted the case on their brief.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee for injuries sustained by him in a collision between one of the defendant's cars and the plaintiff's milk wagon on what is known as the Beltsville crossing, where the City and Suburban Railway of Washington crosses a public road, which was formerly the Washington and Baltimore Turnpike. The plaintiff was returning from the city of Washington to his home in Prince George's

County in a milk wagon drawn by two horses about nine o'clock at night.  The night was dark, it was snowing, and the side curtains to the wagon were down.  The plaintiff was familiar with the crossing, going daily to Washington over the public road, and also with the running of the electric cars which ran regularly one hour apart, on schedule time.  There was only a single track over the crossing, and the track and public road formed an acute angle.  As the plaintiff approached the crossing he stopped his wagon at a point on the public road one hundred and thirty feet "from the farther rail of said railroad," looked and listened; "at the same time the regular scheduled car came by, going from Washington City to Laurel."  As soon as the scheduled car cleared the crossing he remarked to his servant who was with him, "Now, Johnson, we are safe," started to cross over, but another car coming from the same direction struck his wagon and caused the injuries complained of.  At the conclusion of the plaintiff's testimony the Court granted a prayer instructing the jury that there was no legally sufficient evidence upon which they could base a verdict for the plaintiff and their verdict must be for the defendant.  Judgment was entered on the verdict rendered in pursuance of that instruction, and from that judgment this appeal was taken.  The bill of exceptions states that the Court granted the instruction because the plaintiff was guilty of contributory negligence.  The prayer is not in the form that should be used to properly present that question, but inasmuch as the record shows that the case was taken from the jury on that ground, and especially in view of the conclusion we have reached, it will not be necessary to discuss the mere form of the instruction given.  ·

We have, for the most part, purposely confined the above statement of facts to a description of the *locus in quo*, and to the manner in which the plaintiff was injured, as it will be better to state the details of the evidence in connection with the consideration of the two questions involved—(1) What evidence, if any, is there of negligence on the part of the defendant? and (2) Was the plaintiff guilty of contributory negligence?

1st. It is contended that the defendant was negligent in running an extra car, at a high speed, so close to the regular, scheduled car over a public crossing.   The evidence tends to show that the second one reached the crossing about fourteen seconds behind the first car.   The fact that the one which caused the injury complained of was not being run on scheduled time, but was an extra, is not evidence of negligence on the part of the defendant, and did not relieve the plaintiff from using due and ordinary care in approaching the crossing.   In *An. & Balt. Short Line R. R. Co.* v. *Pumphrey*, 72 Md. 82, it was said:   "There is no principle of law which precludes a railroad company from sending extra trains or engines over its road whenever the necessities of its business may require.   Most assuredly it is not negligence to do so.   There is nothing, then, in this circumstance from which negligence can be properly inferred."   That being the law in reference to steam railroads, upon which trains are usually made up of a number of cars, to which other cars can be added when required, it is even more applicable to electric railways running through the country, as circumstances may often arise which require extra cars to accommodate the public—especially in case of a suburban railway, such as this, near a large city.

Nor is there anything in the record to show that it was negligence to run the extra car as close to the other as this was—about fourteen seconds apart.   On a single track railway it may be necessary that they be close, in order to pass those coming from the opposite direction without unnecessary delay, so that both can occupy a switch or siding at the same time.   A period of fourteen seconds is apt to strike us as a very short time, yet considerable space can be covered in that time by an electric car moving at such speed as is usual in the country.   The plaintiff himself drove about one hundred and thirty feet—going "in a rapid walk, almost a trot" in that period of time.   We are not now considering a case in which a passenger was injured by reason of the too great speed or proximity of the rear car to the other, but the appellant's theory is that he had the right to assume that another car

would not pass over the crossing so soon after the first had passed. That assumption was an unfortunate one for the plaintiff, but was not justified by the law or by the facts which are familiar to all observing persons living or accustomed to being in the neighborhood of an electric railway, situated as this is. Indeed it does not even appear in the record that the plaintiff did not know that extra cars were at times run, but only that "he thought there was no other car coming and went ahead." So without pursuing this inquiry further, it is clear that the defendant was not guilty of negligence by reason of the facts we have been considering—especially when taken in connection with the opportunity the public using that crossing has to discover the approach of cars, which will be more particularly noticed in another branch of this opinion.

The record does show that neither the plaintiff nor his servant who was with him in the wagon "heard any gong" until the car struck the wagon, when it was rung three times. There are many cases in this State and elsewhere holding that it is negligence on the part of railroad companies to fail to give proper warning of the approach of their trains to public highways or thoroughfare crossings. The character and time of the warning required may depend upon circumstances, such as the speed of the train, conditions at the crossing, etc. Many of those cases have arisen in connection with steam railroads, but electric railway cars must also be run in a reasonable way, and should give some signal when approaching public crossings. There was no evidence excepting that of the plaintiff and his servant on the subject, and hence their failure to hear the gong with the opportunity they had to hear it, if rung, might have been, under the distinction made in *North. Cent. Ry. Co.* v. *Gilmore*, 100 Md. .414, some evidence of negligence on the part of the defendant, if no warning of the approach of the car was given in some other way. But the mere fact that the gong was not rung would not be sufficient, for it might be that a whistle, such as is now frequently, if not generally, used on suburban and country electric cars may have been sounded, or other sufficient signal given instead

of using a gong.   In the absence of some proof on that sub-
ject, and the record discloses none, the Court might very
properly have declined to submit the case to the jury for want
of evidence of negligence on the part of the defendant, for it
was incumbent on the plaintiff to establish such negligence,
which could not properly be done by simply showing that no
gong was heard without some evidence that no other suffi-
cient warning was given.

2nd.  But we are of the opinion that the plaintiff's testi-
mony disclosed such contributory negligence on his part as
precluded a recovery.   We have seen that he stopped his
wagon one hundred and thirty feet from the crossing, and
there looked and listened.   The point where he stopped "was
at or near the end of a high bank, which prevented him from
seeing more than about two hundred and fifty feet of the
track from said crossing, in the direction of Washington
City," but the record goes on to state "that as he approached
said crossing, said sight of track lengthened near said cross-
ing and extended probably half a mile."   There is nothing in
the record to support the suggestion of appellant's counsel
that he could not have seen that distance on the night of the
accident, but on the contrary he was explaining the conditons
as they existed at that time.   It certainly cannot be inferred
from anything the plaintiff said that he could not have seen an
electric car, if lighted in the usual way (and he did not say
this one was not), a much greater distance than two hundred
and fifty feet, if he had looked.   As soon as the first car
cleared the crossing, plaintiff struck his horses with a whip,
and they went toward the crossing "in a rapid walk, almost a
trot."   Plaintiff did not again stop but "looking in front of his
wagon" (which was in the opposite direction from the ap-
proaching car) drove on the track.   When the horses were
on the track the servant called out "My God, a car is com-
ing," whereupon plaintiff struck the horses with his whip; they
sprang forward and cleared the the track but the car "struck
the hind part of his wagon," threw it over and demolished it,
causing the injuries to the plaintiff.   On cross-examination he

said: "that he did not get up from his seat and look to the right around the curtain when he stopped; he looked directly ahead at the crossing; the car passed almost instantly; he thought there was no other car coming and went ahead." It is thus shown by the plaintiff's own testimony, as well as that of his companion, that he did not stop excepting at the point one hundred and thirty feet from the crossing, from which he could only get a view of two hundred and fifty feet, and after the first car passed over the crossing he travelled the one hundred and thirty feet, did not look in any direction excepting "directly ahead at the crossing," and did not say that he even listened, to ascertain whether another car was coming. He had a view of about a half mile down the track in the direction from which the car was coming, but, assuming there was no other coming, went ahead and drove upon the track in front of the second car. The least diligence would have enabled him to see it coming, and he could probably have heard it if he had listened, as anyone ought to do before crossing a track. He does not show by his testimony that there was not the usual headlight in front, or that the lights in the car were out, and certainly there can be no presumption that the lights were not burning, especially in an electric car which usually stops when the lights go out, as the current is off the wire. It is simply another of the unfortunate cases that sometimes get into Court, in which persons are shown to be seriously injured by taking too much for granted, instead of using their senses for their protection. It is difficult to understand how he could have failed to see the light from the car before he attempted to cross, as he and it were going in the same general direction, by reason of the acute angle made at the crossing, unless he was guilty of gross negligence, amounting to recklessness.

. The case differs altogether from some of those cited where safety gates at crossings were raised, and treated by the Courts as invitations for the travelling public to go upon the tracks. From what we have already said it will be seen that the fact that the regular car had just passed cannot be regarded as

such invitation to cross, and there is nothing else in the record that could furnish any foundation for such contention. There being nothing to show that the motorman could have avoided the accident after discovering the plaintiff in a perilous position, it is unnecessary to discuss that feature which often enters into this class of cases. If the motorman saw him before he drove on the track he had no cause to assume, or fear that he would thus drive on the track in reckless disregard of his own safety.

As the principles applicable to such cases are so well settled and have been so frequently applied by this Court, we will not further prolong this opinion by citing other decisions rendered by us or other Courts. From the facts disclosed in the record, we are of opinion that the plaintiff failed to establish such negligence on the part of the defendant as would entitle him to recover, but if we had reached a different conclusion as to that, the plaintiff would still be precluded from recovering by reason of his own negligence.

> *Judgment affirmed, the appellant to pay the costs.*

(Decided February 13th, 1906.)