# WILLIAM F. O'MEARY

*vs.*

# BALTIMORE & BELAIR ELECTRIC RWY. CO.

*Electric railroad: one crossing tracks; must stop, look and listen; contributory negligence.*

On crossing railroad tracks, especially where the view is obstructed, it is the duty of persons to stop, look and listen; one failing so to do, if hurt by an approaching car, will be held to have contributed to his own injury and not allowed to recover damages.                                          p. 507

If a plaintiff is guilty of contributory negligence, the question of negligence on the part of a defendant becomes immaterial.
                                                             p. 508

*Decided January 15th, 1919.*

Appeal from the Circuit Court for Baltimore County. (HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*E. M. Sturtevant* and *Oliver Y. Harris* (with whom was *Noah E. Offutt* on the brief), for the appellant.

*Elmer J. Cook* and *Thomas H. Robinson*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, the plaintiff below, on the evening of November 7, 1916, attempted to cross the tracks of the appellee company, located on Harford road, in Baltimore County, and in so doing the buggy in which he was riding was struck by one of the cars of said company throwing him therefrom and resulting in personal injuries to him.

The suit in this case is brought to recover for such injuries.

At the conclusion of the plaintiff's evidence the defendant offered two prayers. The first asked that the jury be instructed that there was no evidence legally sufficient to entitle the plaintiff to recover, and the second that the plaintiff was guilty of contributory negligence. Both of these prayers were granted and a verdict directed for the defendant.

The only exception before us is the ruling of the Court upon these prayers.

The two tracks of the company, the north and south bound tracks, are located immediately west of the used way of Harford road, and are constructed of "T" rails fastened to cross ties, so laid as to prevent the use by pedestrians or vehicles of the surface of the ground between the rails and between the tracks, except at crossings specially laid for the use and travel of both pedestrians and vehicles.

Harford road is intersected from the west by List avenue and at this intersection where the accident happened there is a curve in said road.

For some distance west from Harford road List avenue is much lower than the land immediately north and south of it. This is the result of the grading of the avenue to the level of the bed of Harford road, which is much lower than the land immediately west of it. Upon the property north of List

O'MEARY vs. BALTO & BELAIR E. RY CO. 505

Md.]          Opinion of the Court.

avenue and west of Harford road, which we have said, is considerably above both the bed of the road and the bed of the avenue is a hedge several feet high, running east on the north side of the avenue, and parallel with it to a point some ten feet from the south bound track of the defendant's road, and thence from that point northward with the west side of said road; and because of such obstructions an approaching train from the north can not be seen from any point on List avenue ten feet westward of the south-bound track to a distance of more than twenty feet therefrom; that is to say, anyone traveling east on List avenue after reaching a point more than thirty feet from the west rail of the south-bound track can not, because of the obstructions aforesaid, see an approaching train from the north until he arrived at a point ten feet from the west rail of said south-bound track.

The plaintiff in describing how the accident occurred said: "I was driving east on List avenue and as I came near the intersection of the Harford road, the tracks are right close to the hedge line there, and a car was coming north. I stopped for that and before I started again a car was coming south in plain sight and gave plenty of warning with his bell, and after a pause, nothing else being in sight, I drove down to cross the track, and as I got on the track, I glanced up and saw another car coming at a rapid speed. I urged my horse to try to get out of the way, but before I could get across, the car struck my rear wheels, and the horse jumped forward; ran away and threw me out." He further stated that it was about eight o'clock in the evening and dark at the time of the accident; that the intersection of Harford road and List avenue is in the suburban village of Lauraville; that the train approached him at a rapid speed and was not as the time ringing any bell.

The plaintiff upon cross-examination testified that his home where he had lived for six years was a mile and a half from the scene of the accident; that he had driven over List avenue probably on an average of twice a month; that he was familiar with the location and surroundings where the acci-

dent happened and that the place at which he stopped to allow the first and second trains to pass was thirty feet from the west rail of the south-bound track and that at such point he could not see a train approaching from the north.

He was then asked: "Q. When you came down the track and looked up, didn't you see this car coming just as you got to the track? A. Yes, the car was coming at a high rate of speed. Q. Just as you got on the track? A. Yes. Q. Was it lighted? A. Yes. Q. It was night? A. Yes. Q. Was the head light and everything on? A. Yes. Q. Was it a clear night or a stormy one? A. It was a clear night, if I recollect right; it was not raining." A photograph was then shown the plaintiff and he was asked: "Q. This picture, marked 'Defendant's Exhibit No. 3,' shows a man standing at a point near the hedge on List avenue, and the other one shows a man standing at the edge of the west rail on the south-bound track on List avenue? A. Yes. Q. Looking in a northernly direction at the intersection of List avenue? A. The picture looked south. Q. Yes, but the men are looking north? A. Yes. Q. At the point where this man is standing, who is about ten feet back from the track, how far could you see up there? A. I judge about seventy or seventy-five feet. Q. As a matter of fact that picture was taken one hundred and twenty-seven feet away from that crossing. That picture was taken in the center of this track, one hundred and twenty-seven feet from List avenue, and these pictures are taken pretty well? A. They seem to be. Q. You say you never made any estimates and can not tell what they are? A. I am just judging."

The evidence shows that the plaintiff in attempting to cross the defendant's tracks was guilty of contributory negligence, and we find nothing that the defendant did or failed to do that relieves the plaintiff of the consequence of such contributory negligence. *Meidlings' case,* 97 Md. 77; *McNab's case,* 94 Md. 728; *Manfuso's case,* 102 Md. 257; *Hatcher's case,* 103 Md. 78; *Brehm's case,* 114 Md. 302; *Hickox case,* 104 Md. 659, and *Winter's case,* 115 Md. 69. (80 Atl. Rep. 651.)

While waiting for the first and second trains to pass, the plaintiff was not in a position where he could see an approaching train from the north, and it was not until he had reached a point about ten feet from the west rail of the south-bound track that the obstruction to his view was removed.   If at this point, he had stopped to look and listen, he not only could have seen an approaching train from the north for a distance of one hundred and twenty-seven feet, as shown by the photographs admitted in the evidence, or the distance of seventy or seventy-five feet by the admission of the plaintiff, and at that point he could have heard the noise from the approaching train.   He, however, did not stop but continued to drive his horse in a walk upon the track, and it was not until his horse was actually upon the track that he observed the approaching train about fifty or sixty feet away.   His horse, being in a walk, could easily have been stopped at any point within the ten feet before reaching the track, and as he was riding in a buggy with no top, there was nothing whatever to prevent him from seeing from any point within that distance an approaching train.   He may have thought that as one train had so recently passed from the north and another from the south that he would have plenty of time to pass before the approach of another, and for such reason did not look for a passing train, but this did not relieve him of the burden placed on him of stopping at a point upon the road where he could have seen and heard a car, if one was approaching.   He was bound under the circumstances to look and listen for approaching trains, and if the crossing was one of more than ordinary danger and the view of the tracks obstructed at and near the place of crossing, it was his duty to have stopped, looked and listened before he attempted to cross, and as he neglected these necessary precautions, and in consequence of such neglect, was injured by the collision with the passing car, he will be held to have contributed by his own negligence to the accident, and he will not be allowed to recover for any injuries he may have sustained.   *United Railways Company* v. *Durham,* 117 Md. 197; *Manfuso* v. *Western Md. R. Co.,*

102 Md. 261; *Winter* v. *United Rys. Co.,* 115 Md. 69; *Hatcher* v. *McDermot,* 103 Md. 78, and other cases.

As was said in the *United Railways & Electric Co.* v. *Durham, supra,* "assuming there was some evidence of excessive speed or negligence on the part of the appellee, there is no evidence to show that it has any casual connection with the accident itself, or showing that the injury was the direct consequence of such excessive speed. If the plaintiff was guilty of contributory negligence, the question of negligence *vel non* on the part of the defendant becomes immaterial, for if there was no negligence on its part there can be no recovery, and if there was, the same result would follow because of the plaintiff's contributory negligence."

As the evidence shows the plaintiff's negligence was the last and final act, the case, we think, was properly withdrawn from the jury. Being of this opinion, the judgment of the lower Court will be affirmed.

*Judgment affirmed, with costs to the appellee.*