# WILLIAM A. WINTER *vs.* UNITED RAILWAYS AND ELECTRIC COMPANY.

*Prayers; withdrawing case from jury; no evidence.    Appeals;*
*street cars; collision with; duty of wagon*
*driver; contributory negligence.*

Where the trial Court granted an instruction withdrawing the case from the jury on the ground of the plaintiff's contributory negligence, the primary issue on appeal is whether from the uncontradicted evidence of the plaintiff he was guilty of such negligence.                                      p. 70

In an action for damages for injury to the plaintiff's horse and wagon by one of the defendant's electric cars, it appeared by the evidence of the plaintiff's driver that while in a place of safety, and having full control of the horse, without looking for an approaching car or waiting for the passage of a car obstructing the view, he continued on, and when a car was almost on him, still made no effort to stop or change his direction, but kept on his way, in an effort to pass around the car, it was *held,* that his negligence so contributed to the injury that the case was properly withdrawn from the consideration of the jury.                                  pp. 72, 73

Under such facts, the question as to whether or not the car was going at an excessive speed or whether or not its gong was sounded is immaterial.                                  p. 72

*Decided February 3, 1911.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Austin Fink,* for the appellant.

*J. Pembroke Thom* (with whom was *Lee S. Meyer,* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant's horse and wagon were injured by a collision with a moving street car of the appellee company. He sued the company in the Baltimore City Court for damages resulting from the injury, alleging that it had been caused by the negligence of the persons in charge of the car. Under an instruction of the Court below, that from the uncontradicted evidence the driver of the wagon was guilty of contributory negligence at the time of the accident, the jury rendered a verdict for the defendant. The present appeal was taken from the judgment entered on that verdict.

There is but one exception in the record, and that was taken to the action of the Court at the close of the case in rejecting the plaintiff's prayers and granting the defendant's prayer withdrawing the case from the jury. The primary issue therefore presented by the appeal is whether it appears from the uncontradicted evidence that the driver of the wagon was guilty of negligence directly contributing to the occurrence of the accident.

Turning to the record, we find that the following facts appear from such evidence. The collision occurred at the the intersection of Baltimore and St. Paul streets, in Baltimore City, at about twenty minutes after seven o'clock on the morning of Sunday, August 22nd, 1909. At that time there is ordinarily little or no traffic on the street and the view from one square to another is clear. Baltimore street runs east and west, is 66 feet wide and contains the double tracks of the appellee's street railway. St. Paul street runs northerly from Baltimore street, and is also 66 feet wide. Light street runs southerly from Baltimore street, forming a continuous street with St. Paul street, intersecting Baltimore street at right angles. There is a descending grade on St. Paul street going south toward Baltimore street.

On the morning of the accident the appellant's driver, L. H. Pettus, was driving his horse and wagon south, along the west side of St. Paul street toward Baltimore street, on the way to the Light street wharf to deliver a load of newspapers to a departing steamboat. As he came to the Baltimore street crossing he looked east and west on that street for approaching cars and saw a coming west-bound car. What then occurred he states as follows: "When I seen the car coming west I slowed up and he passed, and when he got to the International Trust Company, west, I seen there was no car coming east—that is, I could not see it; if it was it must have been behind." (Witness was here interrupted by plaintiff's counsel, but, being directed by the Court to proceed, he further said): "When I started to pass and got to the gutter I seen the Madison avenue car about to overtake me. If I had went in front of the car he would have hit me full in the face, and may be killed myself and the horse and smashed the wagon; but I seen the motorman was not stopping the car; he was going at full speed; and I tried then to pass behind, and when he caught me in the side and knocked the horse down and done injuries to the wagon and harness and horse." On his cross-examination he admitted that he had run into the side of the car at the distance, as he said, of about four feet from its front.

The witness further said that he came down St. Paul street toward Baltimore street at a dog trot, but when he reached the gutter on the north side of Baltimore street he slowed down "to pretty near a walk". He also said that when he first saw the east-bound Madison avenue car, with which the wagon collided, it was almost opposite him on the south track running at a high rate of speed, and that at that time the front wheel of his wagon was about in the gutter on the north side of the street and the head of the horse was in the west-bound track. When asked by the Court why he did not remain where he was until the car passed him he replied that he could not; that the space was too short; that "the

weight of the wagon would have pulled the wheels out of the
gutter and throwed the wagon ahead." He did not, in his
answer to the Court's questions, say that he made any effort
to remain where he was, but merely expressed the opinion
that he could not have done so for the reasons which he men-
tioned. On the contrary, he elsewhere testified that he went
ahead with the expectation of passing behind the moving
car, which he failed to do. No bell was rung on the car, nor
did it slacken in speed until after the collision. The car was
an open summer one, with twelve transverse seats.

There was the usual conflict as to the speed at which the
car traveled. The plaintiff's witnesses said it was going from
twenty to twenty-five miles an hour, while the conductor and
motorman said it was not going more than five or six miles
an hour, hardly half-speed. They both said that they saw the
horse and wagon coming down St. Paul street toward Balti-
more street, but had no idea that it was going to run into the
car. The motorman said that the driver "had plenty of room
to pull his horse to the right and clear the rear end of the
car, and instead of that he went right ahead and let the horse
have his own way." A lady who was a passenger, sitting
on the third seat from the rear of the car at the time of the
accident, said that she saw the wagon coming down St. Paul
street, and the horse struck the seat in front of her. She said
the car was not going so very fast, but had no idea of how
many miles an hour it went.

Upon this showing we think the learned judge below prop-
erly withdrew the case from the jury. Admitting that the
motorman of the moving car was negligent in failing to
sound his gong as he approached the crossing and assuming
that the car was going at an excessive speed, we think the
testimony of the plaintiff's driver convicts him of negligence
directly contributing to the collision by which the horse and
wagon were injured. When he reached the north side of
Baltimore street, for the purpose of crossing it, and slackened
his speed to a walk to permit the west-bound car to pass him,

he must have had his horse under such control as to have been able to stop him if necessary. Before attempting to make the crossing of the street he should have looked west for an east-bound car. As that car ran on the south side of the street, he could easily have avoided striking if it he had seen it before he started across. He does not say that he looked for an eastbound car at that time, but says that after the west-bound car had passed him, "I seen there was no car coming east; that is, I could not see it; if it was it must have been behind"—apparently intending to say behind the west-bound car, as he mentions no other obstruction and the uncontradicted testimony of the motorman and conductor was that there were very few people then on the street and that at that hour on Sunday the street is clear and "you can see clean from one square to another."

The driver when he halted at the north-bound gutter was in a place of safety, and if he had then exercised such reasonable care as might be expected of an ordinarily prudent driver, and waited for a few seconds until the west-bound car had gone far enough on its way to uncover the view of the street for a reasonable distance west, he would have seen the east-coming Madison avenue car and could easily have allowed it also to pass before attempting the crossing and thus have prevented the collision. Instead of taking that reasonable precaution, he started across the street and had gotten so far that his horse's head was in the west-bound track before he saw the car coming on the east-bound track almost opposite him. He did not even then endeavor to stop his horse until the car had passed, but went forward in an effort to pass around behind the car, with the disastrous result of a collision with it.

We agree with the learned judge below that the uncontradicted evidence in the case shows the driver of the wagon to have ben guilty of negligence directly contributing to the accident complained of, and we find no error on his part in granting the defendant's prayer to that effect. The conclu-

sion at which we have arrived renders it unnecessary for us to consider or pass upon his action in rejecting the plaintiff's prayers.

The judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*