# THOMAS W. UPTON

## *vs.*

# THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Street Railway—Accident at Crossing—Negligence of Chauffeur—Evidence—Failure to Ring Bell.*

In a section of a city which is not built up, a street railway company is required to exercise only such care and caution in the operation of its car as is required in the open country. p. 216

In an action for injuries received by plaintiff by reason of the truck in which he was riding being struck in the night time by defendant's car at a suburban street crossing, *held* that the testimony of those in the truck that, as they first saw the car, immediately before they crossed the track and ten or fifteen feet therefrom, it appeared to be more than a block away, did not show absence of negligence on the part of the chauffeur, it being evident that they misjudged the distance. p. 217

That no bell was rung on defendant's car as it approached the crossing is immaterial, if the chauffeur saw the car in time to take warning, since the ringing of the bell would have added nothing to this admonition. p. 217

Testimony of one in the truck in which plaintiff was, that defendant's motorman seemed to be increasing the speed of the car, was without probative force, he not saying that he saw the motorman do anything to increase the speed, and he having no opportunity to observe any increase in speed, since he testified that the car was only fifty feet away when he first saw it, and that the accident happened instantly. p. 218

*Decided March 16th, 1920.*

Appeal from the Superior Court of Baltimore City (STUMP, J.).

The cause was argued before BOYD, C. J., BRISCOE,. BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ., BURKE, J., by reason of his resignation, not participating in the decision.

*Louis S. Ashman,* for the appellant.

*J. Pembroke Thom,* with whom were *Philip S. Hall* and *Joseph C. France* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court:

The appellant instituted suit in the Superior Court of Baltimore City against the appellee to recover for personal injuries sustained by him caused by the alleged negligence of the defendant.

The declaration alleges

"That on or about the first day of October, 1918, while the plaintiff was riding in his automobile * * * on First Avenue, a public highway in Brooklyn, Maryland, the defendant * * * negligently and carelessly caused one of its street cars to be run violently into and against said automobile, causing the plaintiff to be thrown with great force from said automobile to the street," as a result of which "the plaintiff became seriously and permanently injured * * * and his said automobile became broken and damaged."

The case was tried by a jury and at the conclusion of the plaintiff's evidence the defendant offered two prayers, asking that the case be taken from the jury. The first because of a want of evidence legally sufficient to entitle the plaintiff to recover, and the second because of the contributory negligence of the driver of the automobile. Both of these prayers were granted and a verdict was rendered in favor of the defendant, upon which a judgment was thereafter entered. It is from that judgment this appeal is taken.

In reviewing the rulings of the Court in granting said prayers, it will be necessary for us to go somewhat fully into the evidence offered. The plaintiff, with fourteen others, on the afternoon or evening mentioned in the declaration, had ridden in his automobile truck from his home on the Severn River, near Annapolis, to Brooklyn, until recently a part of Anne Arundel County, but now within the limits of Baltimore City, to attend a church fair. After the fair was over, the plaintiff, with his party, started home. His son, Thomas L. Upton, who was driving the truck, was seated upon the front seat with Ferris Griffith, a son-in-law of the plaintiff. The other members of the party were seated upon boards placed across the truck. The plaintiff was on the left side of the truck upon the last seat back. The body of the truck was three feet wide and ten feet long and the entire length of the truck was 16½ feet. Its body extended in the rear four feet beyond the rear wheels.

After leaving the church about 9.30 P. M., they proceeded northward on Fourth Street, which it seems was a dirt road, and as the witness expressed it, rough at the crossing.

Fourth Street is crossed by Patapsco Avenue. On the north side of it are the two tracks of the defendant's road, constructed of "T" rails and cross ties with stone ballast between them, and are of the same construction as the tracks of an ordinary steam railroad. There is no travel-way or road upon the south side of the tracks although, as stated by one of the witnesses, there is a strip of land on that side sufficiently wide for a road, but it has never been graded and used as such, and the tracks, owing to their construction, cannot be crossed by any vehicle of travel at any point, except at the street crossing.

T. L. Upton, chauffeur of the truck, testified that as they approached Patapsco Avenue and when the front wheels of the truck were about to enter the gutter on the south side of the avenue, he saw the light of a car more than a block away approaching from the west on the eastbound track, the track

first to be crossed by them. The distance, he said, from the gutter, in which his wheels had entered or were about to enter, when he first saw the light of the car, to the south rail of the eastbound track, was ten or fifteen feet. The accident is described by this witness as follows:

"As I approached I was just ready to go into this gutter with the front wheels and I looks and sees I had plenty of room, the car was a long distance down, a fraction over a block, and I had plenty of room and of time and I didn't see nothing out of the way at all, but I knew I had to go slow at the same time on account of the rough condition of the road and the crossing; so I continued going and as I crossed I had just turned my wheel slightly to the left to come into the road, the road goes direct opposite the car line, the north side of the car line and I had turned my wheel a fraction to make the turn when it struck me; I had no idea it was going to strike; of course, I stopped right away."

The wheels of the truck, both front and rear, had passed over the track upon which the car was moving, leaving only about nine inches of the body of the truck still upon the track, when the collision occurred. The blow, he says, was a hard one. The car was at the time coming up grade, but there was nothing between them to obstruct the view.

Upon cross-examination he stated that when he saw the car "it seemed to be going pretty fast." "Q. You thought you could get across there before the car got there? A. There was all the room in the world. Q. You thought you would get across before the car got there? A. I didn't think it. When I see there was plenty of room there was no mistake about it when he was all of that distance away, all the room for anybody to cross; of course, I was not going to stand and wait; I didn't know how long I might have to stand, I seen there was plenty of room and I kept on going along over the rough crossing. I had plenty of time and room; how the car got there, I don't know, but it happened just the same. Q. After you thought it was perfectly safe to go over, you said,

when you got to about the gutter, you say, you kept on going, and you did not look again until the car struck you? A. I did not have no right to look. I was running the machine and trying to attend to my own duty."

Ferris Griffith, who was seated on the front seat to the right of the chauffeur, testified that "it (the car) looked to be a square or more away when we got to the street crossing and when we first started to cross the street." "Q. That would be at the building line? A. Yes, sir; we were a little past the building line, were towards the street." He did not look again for the car after he first saw it but kept on going until the truck was struck by it.

The plaintiff testified thus: When asked by his counsel, "Where was the truck when you saw the light on the car?" he answered, "When I saw the light the middle of the truck was across the track, when I saw the light a square off."

Washington Pumphrey, one of the parties in the truck, who never saw the car until it was fifty feet away, when asked if it was coming fast or slow, said: "It looked as if he was increasing speed. Q. Who was increasing speed? A. The motorman." Upon cross-examination he testified that his attention was first attracted by the light of the car. The truck was then passing over the track, the car fifty feet away. He saw the flash of the light and immediately the accident happened.

It is claimed by the plaintiff that the place where the accident occurred was in a built-up section, as in the city, and that in deciding the question presented, the rule as to the care and caution to be exercised by those operating cars in the built-up sections of the city should be applied. The evidence as to the character of the surrounding country at the place of the accident is sufficient to warrant the conclusion that it was not a built-up section, and that the defendant was required to exercise only such care and caution in the operation of its car as is required of it in the open country.

The chauffeur of the truck, when he was in a place of safety, ten or fifteen feet from the defendant's track, saw the light of an on-coming car at a distance, as he thought, of a block or more away, approaching at a rapid speed. It was at night and he being a stranger to the road and vicinity in which the accident occurred, evidently misjudged the distance, and thinking that he could cross over the track before the car reached that point, proceeded to do so, without again looking in the direction of the approaching train, and the truck was struck by the car and the plaintiff thrown therefrom while it was still upon the defendant's track. The car must have been a very short distance from the crossing when the plaintiff, with a seeming disregard of his own safety, proceeded across the track of the defendant company in the face of the impending danger.

As a matter of common knowledge, the car, even though it was going rapidly and the truck slowly, without stopping, could not have been so far as he says from the crossing when he first saw it, if it reached the crossing before he could get over with his truck. There can be but one conclusion and that is he was mistaken as to the distance of the car from the crossing at the time he saw it, and attempted to cross the track. It was his error of judgment that caused the accident, for had he not miscalculated the distance the car was from the crossing he doubtless would not have attempted to pass over the track and would not have been injured. *Heying* v. *United Railways Co.,* 100 Md. 281; *Meidling* v. *United Railways Co.,* 97 Md. 77.

The record discloses that the car was moving rapidly but it is not shown that it was going faster than it should have gone. In fact the plaintiff said it was necessary for it to go fast to get up the grade. It was said by some of the witnesses that they heard no bell as the car approached the crossing. This was not material because the chauffeur saw the light of "the approaching car in time not to have gone upon the tracks and the ringing of the bell would have added

nothing to this admonition." *Westerman's Case,* 127 Md. 230.

A witness who saw the light of the car, not until it was practically in collision with the truck, testified that the motorman seemed to be increasing its speed. This evidence, we think, under the circumstances, was without probative force. He does not say that he saw the motorman do anything to increase the speed of the car or that he saw the motorman at all; he says he saw the flash and instantly the accident happened. He therefore had no opportunity to observe any increase in the speed of the car. It was suggested that, as it was said that the car was a block or more away when the defendant attempted to go upon the track, such fact was evidence legally sufficient to go to the jury as tending to show that the motorman of the car could have avoided the accident after seeing the defendant in a position of peril upon the track but as we have said, the car was not at such time a block or more away, as demonstrated by the effort and failure of the chauffeur to cross the track, though only a few feet from it when he started to cross it.

As we find no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*