JOSEPH HESS, an Infant, by Christian J. Foos, Jr.,
His Next Friend,

vs.

## THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Street Railway—Accident at Crossing—Last Clear Chance—
Duty to Look and Listen—Instructions.*

The doctrine of last clear chance is not applicable in favor of one run down by a street car unless the motorman knew or, by the exercise of due care, might have known of such person's probable peril, in time to avoid the accident.          p. 608

That a granted prayer of defendant charged plaintiff with the duty of listening as well as looking, before crossing defendant's track, *held* not ground for reversal, since, even granting that plaintiff was not bound to show that he listened, if the jury believed that he slowed down his motorcycle and looked for approaching cars, they could have no doubt that he also listened, there being no evidence that his sense of hearing was impaired.                              pp. 608, 609

That a granted prayer of defendant instructed the jury that plaintiff had the burden of establishing "the state of facts alleged in the declaration," *held* not cause for reversal, the declaration alleging in detail the injuries sustained by plaintiff, and his proof sustaining the allegations on that subject being without contradiction.                              p. 609

*Decided January 13th, 1921.*

Appeal from the Baltimore City Court (AMBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*James Morfit Mullen,* with whom were *C. R. Wattenscheidt*
and *Laurie H. Riggs* on the brief, for the appellant.

*J. Pembroke Thom,* with whom was *Walter V. Harrison*
on the brief, for the appellee.

URNER, J., delivered the opinion of the court.

In the trial of this suit for personal injuries, the plaintiff
testified that, while driving his motorcycle across the de-
fendant railway company's tracks at the intersection of
Broadway and Fayette Street in Baltimore, the rear wheel
of the motorcycle was struck by one of the defendant's cars,
and he was thrown to the ground and seriously injured; that
as he approached Fayette Street, going south on Broadway,
he had the motorcycle under control and looked both ways
on the intersecting street after he passed the building line,
but saw no car approaching from either direction, and then
proceeded to cross; that when he was on the nearest, or west-
bound, track, he saw for the first time a street car coming
at a high rate of speed on the eastbound track; that he was
then too close to that track to stop in safety before reaching
it, and the only possibility of avoiding a collision was
through an effort to cross ahead of the car; that he almost
succeeded in clearing the track, but, as the rear wheel of the
motorcycle was passing over the south rail, it was struck by
the fender of the car and the injuries sued for resulted.
There was testimony on behalf of the defendant tending to
show that its car was moving at a moderate speed and was
being operated with due care at the time of the accident, and
that the plaintiff's motorcycle was driven recklessly in front
of the approaching car. The case was submitted to the jury
on the issues of primary and contributory negligence, and the
verdict was for the defendant.

The only exception in the record has reference to the pray-
ers. Prejudice is mainly alleged to have resulted to the
plaintiff from the instructions granted at the instance of the
defendant because they disregarded the last clear chance doc-

trine. No prayer was offered by the plaintiff submitting that theory, and we find no evidence in the case upon which it could be sustained. When the plaintiff first saw the car he says it was so near that it would have struck him if he had attempted to stop, although his motorcycle was then under control and could have been stopped within a space of six feet. While he stated that he could see no car on Fayette Street when he passed the building line, and had a clear view of the street in both directions, his observation must have been very casual, for the car was actually in sight and within a short distance of the crossing at that moment. One of his witnesses testified that the car was only half a block from the crossing when the plaintiff was about an equal distance from it on Broadway. The car was coming up a heavy grade and could not have been moving at high speed, because the testimony on both sides of the case shows that it stopped within a few yards beyond the point of the collision. The motorman testified that when he first saw the motorcycle it was about eight or ten feet from the car, and coming at such great speed that it ran over the fender before the car could be stopped. Whether the motorcycle was moving as slowly as the plaintiff states, or as rapidly as the motorman describes, it does not appear that the movement of the car could have been arrested in time to avoid the collision after the plaintiff's intention to cross in advance of the car might reasonably have been anticipated. It would only be in the event that the motorman knew, or by the exercise of due care might have known, of the plaintiff's probable peril in time to avoid the accident, that the doctrine of the last clear chance would be applicable. The evidence does not prove the existence of conditions which entitle the plaintiff to complain that the principle just mentioned was not embodied in the instructions granted at the defendant's request.

The facts of this case are very different from those presented in *United Rwys. Co.* v. *Kolken,* 114 Md. 160; *United*

*Rys. Co.* v. *Ward,* 113 Md. 649; *Balto. Consol. Ry. Co.* v. *Rifcowitz,* 89 Md. 338; and the other cases cited by the appellant. In those cases there was evidence from which it could be found that the motorman might have prevented the accident after he knew, or should have known, of the danger of its occurrence. There is nothing in the record before us to prove that in the exercise of due care the motorman could have averted the collision after he became, or ought to have become, aware of the plaintiff's purpose to cross the track without waiting for the car to pass. The principle invoked by the appellant is therefore not appropriate to the present case. The same conclusion was reached upon the facts proven in the street railway cases of *Foos* v. *United Rwys. Co.,* 136 Md. 540; *Cook* v. *United Ry. Co.,* 132 Md. 553; *Heying* v. *United Rys. Co.,* 100 Md. 281; and *Balto. Consol. Ry. Co.* v. *Armstrong,* 92 Md. 554.

One of the defendant's granted prayers stated that it was the duty of the plaintiff, before crossing the railway tracks, to look and listen for approaching cars, and authorized a verdict for the defendant if the jury should find that the plaintiff failed to so look and listen and that the accident was due to such failure. This prayer is criticised because it charged the plaintiff with the duty of listening as well as looking for approaching cars. But if it be conceded that there may be conditions under which the due care required of those about to cross the tracks of a street railway can be fully observed by the use only of the sense of sight, and that it was not necessary for the plaintiff in this case to prove that he both looked and listened for cars before he reached a position of danger, we, nevertheless, can see no injury to the plaintiff in the granting of the defendant's prayer in view of the evidence. If the jury believed that he "slowed down" his motorcycle and looked for approaching cars, as he testified, they could have no doubt that he also listened for them at the same time, as there was no suggestion that his sense of hearing

was impaired. In no view of the case would it be reasonable to hold that this instruction involved a reversible error.

The only other question to be considered relates to the form of a granted prayer of the defendant which instructed the jury that the burden of proof was on the plaintiff to establish by a preponderance of evidence "the state of facts alleged in the declaration." In the case of *United Rwys. Co.* v. *Cloman,* 107 Md. 681, a prayer which would have directed a verdict for the defendant if the testimony left the minds of the jury in a state of even balance as to the truth of "the allegations in the declaration" was held to have been properly rejected, because it would have had a tendency to mislead in view of the fact that the declaration contained a number of allegations as to the plaintiff's injuries which were not essential to his right of recovery. But in *Pillard* v. *Chesapeake Steamship Co.,* 124 Md. 468, a granted prayer in that form was approved. In the pending case the declaration alleged in detail the injuries sustained by the plaintiff, and his proof supporting the allegation on that subject was without contradiction. The sole contested issues in the case were those of primary and contributory negligence, and, as they were fairly submitted to the jury, we see no reason to reverse the judgment and remand the case for a new trial because of the suggested error in the instruction just mentioned, which was plainly unprejudicial.

*Judgment affirmed, with costs.*