ILENE M. DOBLE *v.* UNITED RAILWAYS &
ELECTRIC COMPANY.

[No. 8, April Term, 1928.]

*Decided May 24th, 1928.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Arthur R. Padgett,* with whom was *Charles Jackson* on the brief, for the appellant.

*J. Pembroke Thom* and *R. Lee Slingluff,* with whom was *Philip S. Ball* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Some time during the second week of January, 1926, at about 11 o'clock in the morning, the plaintiff, walking east on the south side of Franklin Street, when she reached the west side of Park Avenue, turned to the north to cross Franklin Street. She testified that she looked up and down both streets "to see if I could see any cars," and didn't see any cars or automobiles, whereupon "I started across, and I got as far as across the last car track, and I went to cross, when this street car hit me, and I just seen the street car as it went to hit me and there was no street car sound, that is, the street car conductor did not ring a bell. And when it struck me I fell, and I don't remember much after that, only I hit my head"; that she was not a Baltimorean but had been living in Baltimore about two years, for a month at 865 Park Avenue, before that on Twenty-fifth Street. "When going from my Park Avenue home in order to get down town I walked straight down Park Avenue. In going back from down in the shopping district I would sometimes go back that way too. I didn't know the streets very well right in the central part of the city but at that time I was eating on Howard Street. I have walked up and down Park Avenue a few times before this accident occurred." Q. And did you come across Franklin Street? A. No, I did not always come across Franklin Street; if I had I would have known where the car tracks were."

Witness further testified that she didn't see any traffic at that corner at that time; that she saw the car just before it hit her, but not in time to get out of the way; that she didn't remember how close the car was to her when she first saw it, but it was a very short distance; that it "practically struck me before I seen it, but I seen it before it hit me."

Asked whether she was crossing on what would be the path of people crossing the street, she replied, "Yes, I walked where most people walk across the street." She further testified that the way was perfectly clear so far as she recalled; that she walked across the street slowly; that she got across the first car track and was about to step off the second track when the car hit her.

Q. Well, now, while you were walking across Franklin Street on the sidewalk from the south side, until the time that you reached the car track, did you again or still look to see if a street car was coming? A. Well, I might have noticed up and down the street on Franklin, but I don't recall if I looked up and down again. Q. You do not recall whether you looked or not? A. The second time; no. Q. You are sure that you did not see the street car which turned out of Park Avenue, west with Franklin, until it practically struck you? A. Well, just a little ways from me before I seen it. * * * I don't know how far it was in front of me. It wasn't very far. If it was, I could have gotten out of the way. Q. Tell us whether, when you reached these car tracks, as you were going north on Franklin Street, when you reached these tracks, did you look to see whether there was any street car coming? A. Coming where? Up Park Avenue? Q. Coming around that corner? A. Well, I looked both ways and I could not see any car. I do not recall how far I looked, but I remember looking up and down Franklin Street, and up and down Park Avenue, but I could not see on Park Avenue very far from Franklin Street from where I was standing. Q. And you never did see a street car? A. No. Q. Was there any automobile or anything else passing there which would obstruct your view from the street car which actually did strike you? A. I do not recall seeing one.

There were three other eye witnesses of the accident who testified for plaintiff, Vernon W. Seitz, John G. Bannon, Jr., and Henry Morris. The first two testified that the car was moving slowly going around the curb, according to Seitz not much faster than a man walks. Morris testified: "It

looked to me he was taking it slowly around the curve, and he had his head completely halfway around, and no bell or looking in front of him at all." Subsequently this witness, in answer to a question on cross examination, said "Well, it was going—well, the way he had his head turned, he was going right fast, going at that speed." When asked to explain what he meant by that, he said: "It was going at a right good rate of speed, at a curve at the intersection, at a turn, I would consider it going fast. Q. Well, if it had been a straight way, would it have been fast? A. Well, he was going fast around the curve, without a bell or looking. (The Court) You are basing it on not looking or ringing a bell, but what counsel is interested in is whether the car itself was going fast or slow? A. It was going fast."

These three witnesses all testified that, in rounding the curve, the motorman's head was turned to the right, in a position in which, according to one of them, at least, he could not see plaintiff.

Seitz was in an automobile with Bannon, who was driving on Franklin Street eastwardly "about midway of the block between Howard Street and Park Avenue." Witness first saw Miss Doble standing on the curbstone on Franklin Street and Park Avenue. "I noticed her step off the curb and walk north on Park Avenue, and as she got right in the centre of the car track which comes around the corner of Park Avenue * * * the car came around slowly and knocked her down. The street car did not sound a signal. The motorman had his head turned. I could not see what caused him to have his head turned." It was turned to the right; that the car was about half way of the curve when witness first noticed it, which would be right around the corner; that plaintiff was walking north on Park Avenue; at the time she wasn't more than two or three feet from the car; that the motorman did not notice her but kept on, "and she was lying under the safety gate, and she was rolling over and over as she was approaching us. The street car rolled her I imagine twenty or thirty feet."

The other witnesses testified to substantially the same facts. They all agreed that there was no traffic at that time and place to interfere with a clear view by plaintiff of the approaching car. A plat was introduced in evidence showing the streets and the car tracks and the distances. From this it appears that, between the tracks curving into Franklin Street around the northwest corner and the southwest corner respectively of Park Avenue and Franklin Street, there is an open space, about seven or eight feet wide at the place where the west line of the pavement would run if extended, and about twenty feet wide at the line of the east side of the pavement. While standing there, plaintiff was just as safe as if she had been on the sidewalk in the then condition of traffic, as shown by plaintiff's evidence. If before leaving this place of safety and stepping on the track she had raised her eyes and looked up the track only a few feet she would have seen that the car had entered the curve and was approaching her. The car must have been well in the curve before she stepped on the track, otherwise she would have gotten safely over, because the turn begins at least twenty-five feet from the east line of the pavement extended.

In this state of the case, defendant was guilty of negligence in not giving warning and in failing to keep a look out for any one who might be crossing the street. *Capital Traction Co. v. Contner,* 120 Md. at page 86; *United Railways Co. v. Kolken,* 114 Md. 160. And plaintiff is chargeable with contributory negligence in attempting to cross the track without looking for approaching cars. *Foos v. United Railways Co.,* 136 Md. 540, 543; *Winter v. United Railways Co.,* 115 Md. 69; *Baltimore Traction Co. v. Helms,* 84 Md. 515. In the first mentioned case we said, through Judge Urner: "The reasons for the distinction between urban and rural conditions in the application of the rule as to due care furnish no support whatever for the theory that it is not the duty of one about to cross the tracks of a railway on the streets of a city to look for approaching cars."

The present case in one respect is like *Hempel v. Hall,* 136 Md. 174, and *Panitz v. Webb,* 151 Md. 639. In each of

them the pedestrian started to cross the street before the vehicle started to turn the corner. But the important differences are: (1) In the present case we are concerned with street cars over which no preference is given to pedestrians at street crossings; in the others we were dealing with automobiles, as to which the law does give pedestrians the right of way at street crossings. (2) In the present case plaintiff's own testimony shows that, before reaching the point of danger, she had an opportunity, while in a place of safety, to discover the risk she was taking; in the other cases it was not shown by the evidence of plaintiffs that, after they started to cross the street, they could by exercising due care have avoided the accidents. *Lozzi v. Pennsylvania R. Co.,* 152 Md. 508, and *United Railways Co. v. Ward,* 113 Md. 649, also relied on by appellant, are distinguishable from the present case on their facts.

But appellant strongly urges that, even if she was guilty of contributory negligence, there should not have been a directed verdict, but it should have been left for the jury to determine whether the defendant could have stopped the car before striking plaintiff if the motorman had been looking in the direction his car was running instead of looking around. That contention raises the question whether the doctrine of the last clear chance is applicable to the fact of this case.

In *Hess v. United Railways Co.,* 137 Md. 605, there was a collision between a street car and a motor cycle at intersecting streets. It appeared from the evidence that the motor cyclist could have seen the street car approaching in time to stop his machine before attempting to cross the track on which the collision occurred. We held that the doctrine of last clear chance was not applicable, because there was "nothing in the record before us to prove that in the exercise of due care the motorman could have averted the collision after he became, or ought to have become, aware of plaintiff's purpose to cross the track without waiting for the car to pass." So here, there is no evidence that the motorman, by the exercise of the due care, could have stopped the car in time to avoid striking plaintiff after he ought to have become aware,

if he had been keeping a careful lookout, that she intended to attempt to cross the track in front of his car. So far as the evidence shows, it was a typical case of concurrent negligence up to the very moment of the collision.

There is nothing in the record to bring into operation the doctrine of the last clear chance. The usefulness of street cars would be unnecessarily curtailed if it should be held that a motorman is bound to stop his car whenever he sees a pedestrian approaching his car track in the act of crossing a street. With such a requirement traffic would be constantly suspended. *State, use of Kolish, v. Wash., B. & A. R. Co.,* 149 Md. 443, 450, 459. See also, *Md. Central R. Co. v. Neubeur,* 62 Md. 398; *Cook v. United Rys. Co.,* 132 Md. 553; *State v. Glen Echo Park Co.,* 137 Md. 529; *Morrow v. Wash., B. & A. R. Co.,* 145 Md. 285; *Penna. R. Co. v. Bell Concrete Co.,* 153 Md. 19; note, 7 *L. R. A.* (N. S.) 132; *Wash., B. & A. R. Co. v. Goodwin,* 137 Md. 539, 543; *Trenary v. United Rys.,* 143 Md. 112; *Lewis v. Balto. & O. R. Co.,* 38 Md. 588; 20 *R. C. L.,* secs. 114, 115, and 116. There is an interesting discussion of the doctrine in 29 *Yale Law Journal,* 896, and 30 *Id.,* 154. See also 37 *Harvard Law Rev.,* 911; 28 *A. L. R.* 283; 46 *Id.,* 1047; 5 *Neg. & Comp. Cas. Ann.* 108.

*Judgment affirmed, with costs to appellee.*

———

OFFUTT, J., delivered the following dissenting opinion.

I am unable to agree with the opinion of the court that this case should have been taken from the jury on the ground that, as a matter of law, the plaintiff's negligence contributed to the happening of the accident which occasioned the injuries of which she complains.

The facts favorable to her contention, which may be inferred from the evidence, are that she proceeded east on the south side of Franklin Street, until she reached or nearly reached Park Avenue, when she attempted to cross from the south to the north side of Franklin Street, but, before doing so, she looked for approaching cars but saw none. At

that point there are curves and switches connecting a set of tracks on Franklin Street with a set of tracks on Park Avenue, over which the cars of the appellee are operated, and some but not all of the cars south bound on Park Avenue, upon reaching Franklin Street, turn on the curving track from Park Avenue into it.

As she was proceeding across Franklin Street, and had reached a point at or near the curved track over which a car might be expected to come turning west on Franklin Street, appellee's car, coming around the curve very fast and without any warning, struck her. Upon those facts it seems difficult to attribute to the plaintiff's conduct that degree of recklessness which this court has repeatedly said is essential to negligence as a matter of law. Certainly she was not negligent in attempting to cross the street at all, for while, under modern conditions, crossing a city street is a perilous adventure, in theory at least the streets are common highways open to pedestrian as well as to vehicular traffic. Nor can it be said as a matter of law that she was negligent in failing to see the car as it approached on Park Avenue, when she looked before she attempted to cross the street, or that her statement that she did not see it is incredible, when it is a matter of common and universal knowledge that, under modern traffic conditions, her view may well have been obstructed by parked automobiles. Nor can she be said to have been negligent in law because she did not pause in the middle of a city street, at a point which street cars as well as automobiles could have approached from several different directions, to look for cars coming around that particular curve, because she may have assumed that, before any street car turned off Park Avenue into Franklin Street, it would warn her of its approach in time to enable her to avoid being struck by it.

Urner, J., also dissents.