HARRY T. CAMPBELL & SONS *v.* UNITED RAILWAYS & ELECTRIC COMPANY.

[No. 13, April Term, 1931.]

*Decided April 29th, 1931.*

648

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Rignal W. Baldwin, Jr.,* with whom were *William D. Macmillan* and *Semmes, Bowen & Semmes,* on the brief, for the appellant.

*Walter V. Harrison,* with whom was *Philip S. Ball* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment on a directed verdict for the defendant in an action brought in the Superior Court of Baltimore City by Harry T. Campbell & Sons, for its own use and that of the Columbia Casualty Company, against the United Railways & Electric Company, to recover compensation for damage to its truck caused by a collision between the truck and a street railway car operated by the defendant over its railway tracks.

The collision occurred on Roland Avenue, a public highway of Baltimore City, a short distance south of Elmhurst Avenue, at a point where tracks of the defendant branch and curve from its north and south bound tracks running along Roland Avenue, westerly across that avenue to its car barn, which is west of it. Roland Avenue is a wide thoroughfare running from Lake Avenue south through Roland Park. In the center of it is located defendant's right of way, over and along which are laid two sets of T rail tracks, and which is separated from that part of the avenue used for general vehicular traffic by low hedges, broken by open spaces at street intersections. On either side of the right of way is an unpaved strip four and one-half feet wide, and between those strips and those parts of the avenue devoted to pedestrian traffic are macadam roadways twenty feet and six inches wide. On the east side of its right of way, and adjacent to its north-bound tracks, the defendant maintains a landing

station for the use of passengers. From that station two sets of tracks branch from its north-bound tracks and curve north-westerly across Roland Avenue to a "waiting platform" which it maintains on its own property immediately west of the avenue. North of that property two other tracks curve south-westerly from the south-bound tracks across the avenue to the same platform. So that there are in the bed of the western driveway on Roland Avenue four sets of curving tracks at that point.

The plaintiff called two witnesses, one the truck driver, the other defendant's motorman. Donovan, the truck driver, testified that, at the time of the accident, he was operating a three and a half ton truck, carrying a load of 13,000 pounds, southerly along Roland Avenue at about fifteen miles per hour; that as he approached the curving tracks in Roland Avenue he observed a street car standing on the straight north-bound track of the defendant, but "thought" it was "going to stand there," or at least would not enter the south-ernmost switch, and paid no further attention to it until he saw it directly in front of him, too late to avoid a collision, and that at that time it appeared to the witness that the car had "speeded up"; that the right front wheel and right front part of the frame of the truck struck the rear end of the street car. On cross-examination he added that he could not say definitely whether, when he first saw it, the street car was standing still or moving slowly; that he had been over the avenue before and was familiar with the crossing.

Warner, the motorman, testified that he stopped the street car on the north-bound track at the landing station on the east side of the right of way and discharged two passengers, that he then proceeded over the southernmost switch across Roland Avenue to the "waiting station"; that because of the switch the car was moving slowly at eight or ten miles an hour; that the truck was coming between twenty and twenty-five miles an hour; that he first saw the truck when it was about two hundred feet away, and it was then traveling at about twenty-five miles an hour.

The question in the case is whether these facts furnish evidence legally sufficient to show that the sole and proximate cause of the collision was the defendant's negligence, the answer to which depends (1) upon whether they will permit any rational inference that the defendant was guilty of primary negligence directly contributing to the accident, and, (2) if it was, whether these facts show as a matter of law that plaintiff was also guilty of negligence directly contributing thereto.

If any negligence on the part of the plaintiff directly contributed to the happening of the accident, the negligence of the defendant as a contributing factor is immaterial. *United Railways v. Durham,* 117 Md. 192, 83 A. 154; *State, use of Needles, v. Md. Elec. Rys. Co.,* 124 Md. 441, 92 A. 961; *O'Meary v. Balto. & Bel Air Ry. Co.,* 133 Md. 508, 105 A. 732. We will therefore consider these questions in inverse order.

The formula long employed in this state to test the existence of contributory negligence as a matter of law is that the act to which that quality is ascribed must present some feature of reckless inattention or indifference so prominent and decisive in character that no room is left for ordinary minds to differ as to its imprudence (*Waltring v. James,* 136 Md. 414, 111 A. 125; *Balto. & O. R. Co. v. State, use of Wiley,* 72 Md. 36, 18 A. 1107; *Askin v. Moulton,* 149 Md. 143, 131 A. 82); and that it must in combination with some negligent act of the defendant have been the proximate cause of it. *Kelly v. Huber Building Co.,* 145 Md. 340, 125 A. 782. Where the facts out of which it is said to arise are in dispute, or where more than one inference may fairly and legitimately be drawn from them, one or more of which may tend to negative its existence, the question is one for the jury. *Nelson v. Seiler,* 154 Md. 76, 139 A. 564; *State, use of Pachmayr, v. Balto. & O. R Co.,* 157 Md. 262, 145 A. 611; *Dwyer v. Chew,* 149 Md. 285, 131 A. 350; *Lozzi v. Pennsylvania R. Co.,* 152 Md. 510, 137 A. 293. But where the facts are undisputed, and are open to but one inference, whether they show contributory negligence as a matter of law is for the court to

decide. *State, use of Bacon, v. Balto. & P. R. Co.,* 58 Md. 482, 485; *Price v. Phila., W. & B. R. Co.,* 84 Md. 511, 36 A. 263.

The facts in this case were proved by the plaintiff's own witnesses, for the defendant offered no evidence. They are simple, unambiguous, and are neither disputed nor qualified. Disregarding the question of the defendant's negligence, which is immaterial in the consideration of this question, *supra,* they show that the plaintiff's chauffeur, driving its truck, which with its load weighed ten tons, southerly over Roland Avenue, a heavily traveled highway, approached four sets of street railway tracks, which curved, from the defendant's main line directly across the roadway over which he was traveling, into the defendant's waiting platform and car barn, and over which he was bound to anticipate that street cars would run from time to time. He had been over the road at that point before the accident, was familiar with the crossing and knew of the "waiting platform" on the west side of the avenue. He actually saw the street car which collided with the truck, while it was either standing still or moving very slowly, before it entered the curve at all, but failed to see it again until it was "right across the road in front of" him, although the accident occurred in the daytime, and the street car was in plain view from the time he first saw it until the collision. His explanation was that, when he first saw the car, he thought it would not enter the southernmost switch, but that, if it entered any switch, it would be the northernmost switch leading from the north-bound straight track. He gave no reason for that belief, and none is suggested in the evidence, but his explanation affords positive proof that he knew that the car which he saw on the straight north-bound track might enter one of two switches running from that track directly in front of the truck, and until it actually entered one of the two he could not have known which of the two it would enter. The car tracks themselves were a clear and unmistakable warning that the street car might cross in front of him, but notwithstanding that, after he first saw it, which was before it entered the switch, he did

not even turn his head to look at it again, and did not see the street car again until it was across the road in front of him. Those facts are wholly inconsistent with any theory other than that the driver of plaintiff's truck was guilty of negligence directly contributing to the happening of the accident of which it now complains, and such negligence bars the plaintiff's right to recover in this case. Reasonable care in the operation of such a ponderous and potentially dangerous machine as a loaded truck weighing ten tons over a public highway requires that the driver shall at all times maintain a vigilant and careful watch to avoid injury to others in the lawful use of the highway, and that he shall at all times have the machine under such control as will permit its safe operation over such highways under modern traffic conditions. But for the driver of such a truck, operating it at a speed of from fifteen to twenty-five miles an hour along such a thoroughfare as Roland Avenue, to approach tracks running from the main line of a much used street railway directly across his course without turning his head to see whether a street car, which he knew might pass over them in front of him, would actually do so, was not only a violation of that duty, but showed such a reckless indifference to his own safety and that of the traveling public as to amount to negligence in law. *Schell v. United Rwys. Co.*, 150 Md. 663, 133 A. 598; *Colgate v. United Rwys.*, 156 Md. 472, 144 A. 519; *Doble v. United Rwys.*, 155 Md. 349, 142 A. 106; *Crystal v. Balto. & Bel Air Rwy. Co.*, 150 Md. 256, 132 A. 629; *Foos v. United Rwys. Co.*, 136 Md. 540, 110 A. 849.

Appellant further contends that defendant's motorman, by the exercise of reasonable care, could have discovered the perilous position of its truck in time to have avoided the collision, and that his failure to exercise ordinary care to avoid the accident after he should have discovered the perilous position of the truck constituted actionable negligence, resulting in loss and damage to it for which it is entitled to recover in this case. But there are no facts in evidence here which could justify the application of that doctrine. Assuming that the motorman was negligent, his negligence must have con-

curred with that of the truck driver in causing the accident. Each was in plain sight of the other and each was proceeding on a course which, if continued, would probably result in a collision between the two vehicles which they were operating, and ordinary care required each to proceed cautiously, with the vehicle he was operating under control, until the intention of the other became apparent. The truck driver had no more right to assume that the motorman would yield the right of way, than the motorman had to assume that the truck driver would yield it. Nor can it be assumed that the motorman should have known that the truck would not stop before it reached the track over which the street car was running, any more than it can be assumed that the truck driver should have known that the street car would not stop before the truck collided with it. The negligence of each was identical, and concurrent, and neither can be said to have had a "last clear chance" to avoid the consequences of the negligence of the other, and, since the essence of that doctrine is that the negligent acts under consideration shall be sequential and not concurrent, it has no application to the facts of this case.

It follows that the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*