## NATIONAL HAULING CONTRACTORS CO. *v.* BALTIMORE TRANSIT CO.

[No. 5, October Term, 1945.]

*Decided November 1, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON and MARKELL, JJ.

*Foster H. Fanseen,* with whom was *Isador Roman* on the brief, for the appellant.

*Wallis Giffen* for the appellee.

MELVIN, J., delivered the opinion of the Court.

This suit is the result of a collision between a tractor-trailer unit belonging to the appellant-plaintiff, and operated by one of its drivers, and a two-car train of the appellee-defendant, at or near the intersection of Baltimore Street and Bond Street in Baltimore City about 5:30 o'clock on the morning of December 20, 1943.

The tractor-trailer combination, 40 feet in length overall and weighing about 16 tons, had been proceeding in a

southerly direction on Bond Street and was going down a three per cent. grade. That street, which runs north and south, is 41 feet 10 inches wide, with sidewalks approximately 14 feet 6 inches wide. Baltimore Street, which runs east and west, is 41 feet 5½ inches wide, with sidewalks approximately 14 feet 9 inches in width. According to the testimony of the driver Louis Vasili, who had traveled over this intersection before, he was going about fifteen miles an hour as he approached Baltimore Street, and was to the right of the center of Bond Street. As he neared the intersection, and when the radiator of the tractor had about reached the north building line of Baltimore Street, he looked both ways and saw a two-car trolley train approaching from his left on Baltimore Street, "75 or 100 feet away" and coming down a five per cent. grade. Without looking further he proceeded with his ponderous vehicle right on across Baltimore Street in the path of the oncoming street car train. The cab in which he was sitting had passed the curb line on the south side of that street when the street car collided with the trailer a few feet forward of its left rear wheels, about ten feet from the end of the trailer, and serious property damage resulted.

Further facts stipulated or established were that at the time and place of the accident it was dark, the weather was clear and the streets were dry; that both vehicles were lighted in the customary manner and that the street light at the northeast intersection of Baltimore and Bond streets was burning; that there was nothing to obstruct the view of either operator as the tractor-trailer entered the intersection, and that the latter vehicle, after its driver saw the street car coming from his left 75 or 100 feet away, had to travel the distance of at least 27 feet from the north building line of Baltimore Street to the nearest trolley track; that the street car train was coming at normal speed and that neither of said streets is a boulevard or controlled by automatic traffic signal or by police officer.

At the conclusion of the plaintiff's case defendant offered two demurrer prayers, A and B. The former asked to withdraw the case from the jury for the lack of legally sufficient evidence of primary negligence, and the latter sought withdrawal on the ground of contributory negligence. The Court did not act on defendant's A prayer but granted its B prayer, and the exception to this ruling presents the one question involved in this appeal.

As expressed in appellant's brief, the question is: "Was the driver of the National Hauling Contractors' tractor-trailer guilty of such contributory negligence that, as a matter of law, the case should have been withdrawn from the jury?"

In passing upon this question it is of first importance to note that contributory negligence, like primary negligence, is relative and not absolute and is dependent upon the peculiar circumstances of each case. *Crunkilton v. Hook*, 185 Md. 1, 42 A. 2d 517, 520; *Siejak v. United Rwys., etc.*, 135 Md. 367, 109 A. 107; *Ausherman v. Frisch*, 164 Md. 78, 163 A. 852; *Chesapeake & Potomac Telephone Co. v. Merriken*, 147 Md. 572, 128 A. 277, 41 A. L. R. 763; *McNab v. United Rwys., etc.*, 94 Md. 719, 51 A. 421.

In all such cases it is essential that to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the negligent act relied on must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 137, 127 A. 500; *Taxicab Co. of Baltimore City v. Emanuel*, 125 Md. 246, 93 A. 807; *State v. Carroll-Howard Supply Co.*, 183 Md. 293, 301, 37 A. 2d 330; *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 148 A. 426; *Cogswell v. Frazier*, 183 Md. 654, 39 A. 2d 815.

In the instant case the inquiry, therefore, becomes: Was the action of plaintiff's chauffeur in starting across

Baltimore Street with his combination vehicle, under the circumstances related by him, such a distinct, prominent and decisive act of negligence as amounts to a bar to plaintiff's recovery? These circumstances are: When the cab of his trailer reached the building line of Baltimore Street he was approximately 32 feet from the nearest street car track, and, looking to his left, then and there, saw a trolley train approaching the intersection. Without giving another look, he started right across the intersection at an unchanged speed of fifteen miles an hour in the path of the oncoming trolley. The speed of the latter was described as "normal" by the plaintiff's other witness, Griffith, who was driving another tractor-trailer some fifty feet in the rear of the vehicle which was struck. The mere statement of these basic facts is sufficient to show, without any room for doubt, that this action of plaintiff's employee directly contributed to the happening of the accident and was a proximate cause of it. *Campbell & Sons v. United Rwys., etc.*, 160 Md. 647, 650, 154 A. 552. As in that case, the facts are wholly inconsistent with any other theory and make out a clear case of negligence in law.

It manifests a lack of due care, and hence constitutes negligence, for a motorist operating a heavy and ponderous combination of tractor and trailer, weighing sixteen tons, with an over-all length of some 40 feet, to attempt to cross railroad tracks in the face of a street car train seen to be approaching seventy-five to one hundred feet away. See *Rose & Son v. Philadelphia Rapid Transit Co.*, 73 Pa. Super. 260; *Blashfield Cyclopedia, Automobile Law & Practice*, Vol. 3, Sec. 1992. While a motorist has the right to expect others to observe the specific legal duties the law demands of them, this does not excuse him from the specific duties which the law imposes upon him, and for a motorist to leave a place of safety and unnecessarily to incur a risk of injury in complete and utter reliance upon a motorman's avoiding any danger created by his (the motorist's) action, is negligence. *Case v. Jefferson*

*City Bridge & Transit Co.*, Mo. App., 189 S. W. 390; *Blashfield Cyclopedia, Automobile Law & Practice*, Vol. 3, Sec. 1978.

On this appeal, the question of primary negligence is not before us, inasmuch as the trial judge did not act on defendant's "A" prayer relating to that point. However, if any negligence on the part of the plaintiff directly contributed to the happening of the accident, the negligence of the defendant as a contributing factor is immaterial. *Campbell & Sons v. United Railways, etc., supra.* While the burden of proof is upon the defendant to establish such contributory negligence, where the facts are undisputed and are open to but one inference, whether they show contributory negligence as a matter of law is for the court to decide. *State, to use of Bacon v. Baltimore & P. R. R. Co.*, 58 Md. 482; *Ziehm v. United Electric Light & Power Co.*, 104 Md. 48, 64 A. 61; *Mitchell v. Dowdy*, 184 Md. 634, 42 A. 2d 717.

In the use of public street crossings, a clear distinction is to be drawn between those cases involving pedestrians and ordinary automobiles and those involving heavy trucks and tractor-trailer combinations. In recent years the number of these latter vehicles on the public highways has steadily increased, so that now they are imposing a servitude thereon which, in comparison with less unwieldy and less dangerous vehicles, calls for the exercise of more than usual care to avoid injury. *United Rwys., etc. v. Sherwood Bros.*, 161 Md. 304, 309; 157 A. 280; *Siejak v. United Rwys., etc.*, 135 Md. 367, 109 A. 107, containing an apt quotation from *New York Central, etc. v. Maidment*, 3 Cir., 168 F. 21, 21 L. R. A., N. S., 794; *Campbell v. United Railways, etc., supra* [160 Md. 647, 154 A. 554].

This rule applies particularly to street intersections where electric trolley cars are known to be passing at frequent intervals, and where the safety, and even the lives of passengers and crew, as well as of the motor vehicle operators, are dependent upon the exercise of a

degree of care commensurate with the extraordinary risk involved. As expressed by Judge Offutt in the Campbell case: "Reasonable care in the operation of such a ponderous and potentially dangerous machine as a loaded truck weighing ten tons over a public highway requires that the driver shall at all times maintain a vigilant and careful watch to avoid injury to others in the lawful use of the highway, and that he shall at all times have the machine under such control as will permit its safe operation over such highways under modern traffic conditions."

In that case it was held to be negligence in law for the driver of a heavily loaded truck to approach tracks running from a much-used street railway directly across his course without turning his head to see whether a street car, which he knew might pass over them in front of him, would actually do so.

In the case at bar, the plaintiff's driver not only did not maintain a "vigilant and careful watch to avoid injury but did not maintain any watch at all. After giving one glance when he came to the building line of Baltimore Street, 32 feet from the nearest street railway tracks, and observing a trolley train approaching only 75 to 100 feet away, he kept right on going with unslackened speed of 15 miles an hour, without even looking again—according to his own version. In the face of this testimony there can be no recovery, for the chauffeur's action leaves no room for doubt that it directly contributed to the accident and was a proximate cause of it. *Heying v. United Rwys., etc.*, 100 Md. 281, 59 A. 667; *Schell v. United Rwys., etc.*, 150 Md. 663, 133 A. 598; *Siejak v. United Rwys., etc., supra; Upton v. United Rwys., etc.*, 136 Md. 212, 110 A. 484; *Winter v. United Rwys., etc.*, 115 Md. 69, 80 A. 651; *Colgate & Co. v. United Rwys., etc.*, 156 Md. 472, 114 A. 519; *Doble v. United Rwys., etc.*, 155 Md. 343, 349, 142 A. 106; *Crystal v. Baltimore & B. A. Electric R. Co.*, 150 Md. 256, 132 A. 629; *Foos v. United Rwys., etc.*, 136 Md. 540, 110 A. 849.

It was not only his duty to look before starting to cross the intersection but to keep on looking until the track, the real point of danger, was reached. *Siejak v. United Rwys., etc., supra; Crystal v. Baltimore & B. A. Electric R. Co., supra; Meidling v. United Rwys., etc.,* 97 Md. 73, 54 A. 612; *United Rwys., etc. v. Durham,* 117 Md. 192, 83 A. 154.

It is obvious from the testimony of the plaintiff's driver that the guess he made as to the proximity of the oncoming street car was based entirely on the one glance he gave after he started to cross the intersection, and that this guess was totally unreliable. It was negligence in itself to undertake such a perilous crossing without looking further. The chauffeur's miscalculation, and the faulty basis of it, are emphasized by the fact that, even though the street car was going at a normal rate of speed, the collision took place in "a matter of seconds" after the tractor-trailer reached the intersection of Baltimore Street.

While this conclusion of contributory negligence is inescapable from the testimony of plaintiff's chauffeur, himself, it is strengthened by that of two other witnesses for the plaintiff, namely, Frederick Griffith, a co-employee of Vasili, who was driving another tractor about fifty feet behind the one which was hit, and Police Officer Jesse Hood. The former testified that, before he reached the intersection and when he was about 120 feet from it, he could see the reflection of the trolley train in the "show windows" on the south side of Baltimore Street and determined that the street car was going "at a normal rate of speed." The other witness (Hood) testified for the plaintiff that he talked with the defendant's motorman at the hospital, who told him that all he saw was "that this big thing popped up in front of him and he was knocked out for the time." With the testimony of these three witnesses in the record—and it constitutes substantially the plaintiff's whole case—the contributory negligence of the plaintiff's driver stands out as an insurmountable obstacle to recovery.

A case recently decided by this Court, and one strongly relied on by the appellant, will serve to illustrate the distinction between those cases which should be allowed to go to the jury on the issue of contributory negligence and those which should be withdrawn, as a matter of law. We refer to *Davidson Transfer & Storage Co. v. Baltimore Transit Co.*, 183 Md. 263, 37 A. 2d 326. The locale and the main facts of that case are strikingly similar to the case at bar. In the Davidson case, the tractor-trailer, 40 feet in length over-all, was being operated south bound on Bond Street toward Monument Street in the City of Baltimore about 7:30 o'clock on the morning of March 30, 1943. The driver of the vehicle testified that when he came to the intersection of Monument and Bond streets he did not see anything coming or going either way, so he pulled out into the intersection and saw the street car for the first time when the front of the trailer was on the car tracks. The testimony was definite that the street car was then near Bethel Street, approximately 245 feet away. The driver stated that he continued on across "because the street car was up there so far I just say well, being that far, I will be across before he hit me." The record in this case also contains the particularly significant testimony of another witness who stated that, as he was walking west on Monument Street, he observed this street car, that it was making a "terrific noise," that it "was running at a terrific rate of speed," and could not be stopped after applying the brakes 100 feet away from the Bond Street intersection. The street car struck the trailer about four feet from its center.

Under these circumstances this Court held that it could not be said, as a matter of law, that "the operator of the tractor was guilty of such conduct so distinct, prominent and decisive that ordinary minds would not differ in declaring it to be negligent." The judgment of the trial court in favor of the defendant on the ground of contributory negligence, as a matter of law, was, therefore, reversed.

That case is typical of a long line of cases (not necessary to enumerate here) which fall within the same category. There is another large group of cases decided by this Court wherein the facts and circumstances have led the Court to the opposite conclusion—that is to say, to the granting of a prayer for instructed verdict. It is within this latter group that the case at bar is to be classified, for it is only necessary to emphasize the facts which sharply distinguish it from the controlling facts in the Davidson case. Here the tractor driver was some 32 feet away from the nearest street car track when he saw the oncoming trolley train, and was not right on the track, as in the Davidson case. Moreover, the street car in that case was traveling "at a terrific rate of speed," being definitely, and not a matter of guess work, a city block of 245 feet away from the intersection when the tractor-trailer was in the car track; whereas in the instant case, the trolley train was going at a "normal" speed and was observed by plaintiff's chauffeur, when he was at a place of safety 32 feet from the nearest car track, to be from "75 or 100 feet" away as he started across the intersection. The basic distinction between the facts of the two cases is too clear to require further comment or to make the citation of further authorities necessary.

The appellant earnestly contends that, even though its chauffeur be held guilty of negligence directly contributing to the accident, nevertheless the case should have been submitted to the jury because the motorman could have avoided the consequences of the former's negligence by the exercise of ordinary care after he discovered, or should have discovered, the perilous position of the tractor-trailer. This is on the theory that the doctrine of last clear chance applies to this case. However, the record before us does not present any facts to support that contention.

As this Court has pointed out in a number of cases, the doctrine is only applicable when the defendant's negligence in not avoiding the consequences of the plain-

tiff's negligence, is the last negligent act. It can never be invoked when the plaintiff's own act is the final negligence. *McNab v. United Rwys., etc., supra; United Rwys., etc. v. Sherwood Bros.*, 161 Md. 304, 310, 157 A. 280.

In the case at bar, the last opportunity to avoid the collision by the exercise of even ordinary care was the plaintiff's. Instead of heedlessly starting across the tracks, as he did, the chauffeur could have easily "played safe" by simply stopping his machine (he admitted its brakes were in good condition) when he saw the approaching trolley train only a short distance away, and when he was in a position of safety 32 feet from the nearest track. What the motorman could have done on his part, to have avoided the consequences of the plaintiff's negligence is left to conjecture and speculation, for there is a total lack of evidence showing where the street car was after the plaintiff's chauffeur had gotten himself into a position of danger, or what the motorman could have done thereafter. If the facts show that the negligence of the two operators was concurrent, that, alone, would take the case out of the operation of the doctrine. *Campbell v. United Rwys., etc., supra; Doble v. United Rwys., etc.*, 155 Md. 343, 348, 142 A. 106; *Colgate & Co. v. United Rwys., etc.*, 156 Md. 472, 477, 144 A. 519; *Heying v. United Rwys., etc., supra; Crook v. United Rwys., etc.*, 132 Md. 447; *Foos v. United Rwys., etc.*, 136 Md. 540, 542, 110 A. 849.

We hold that the trial court was correct in granting the defendant's "B" prayer and its judgment on that ruling is, therefore, affirmed.

*Judgment affirmed, with costs.*

HENDERSON, J., concurs in the result.